King, J.:
This action was heard in the court of common pleas on a demurrer to the petition, which was sustained by that court, and final judgment rendered thereon. The plaintiff below seeks to have that judgment reversed here, and claims that the court erred in sustaining the demurrer.
The action was brought by Turner against the city of Toledo and the mayor of said city; the police commissioners of said city, being the acting board of health in and for said city; Guy G. Major, the mayor of said city and ex-officio president of said board of police commissioners and board of health, and J. T. Woods, M. D., the executive *628 officer of said board of health,defendants. The petition contained two causes of action; the first of which, after alleging the different offices held by defendants and the duties which they fulfilled, and after alleging some provisions of the ordinances of the city — which I need not notice particularly — and stating the powers and duties of these various officers to some extent, and then specially averring that Dr,. J, T. Woods was the health officer of the city, and thereby an executive officer of the board of health, and averring that the plaintiff was the owner of certain premises, and was engaged at the time of the grievances committed in the-business of running a saloon at some point in the city, and that he conducted thereupon a large and profitable business, he alleges that upon April 4, one Arthur Goins, a resident of the city of Toledo, came into his saloon and claimed to> the plaintiff that he was sick and unable to leave the premises, That the plaintiff thereupon immediately informed the health officer that the said Goins was at his said saloon and unable to leave it, and demanded, he says, that said' health officer, acting in his official position and character, should remove said Goins immediately from plaintiff’s saloon to the city [hospital; claiming also to the city health-officer, that if the man who was sick remained upon his-premises, it would greatly injure and damage his business.. That at this time the^man was not in any dangerous condition^ — -so plaintiff thought. That on the 9th of April — -a-day or two afterwards — said health officer appeared on the-scene and inspected^Mr. Goins, and pronounced him sick with-small pox, and he then proceeded, as the petition alleges, to wrongfully,illegally and maliciously quarantine the plaintiff’s housejand saloon, and ordered into the saloon and premises seven|persons,and ordered the premises closed and quarantined,and®forcibly detained therein by the said quarantine the plaintiff’s wife and the seven persons aforesaid, and that said quarantine was ordered by this officer or agent *629 of the board. That after this occurred, the health officer promised the plaintiff that the city of Toledo and the board of health would pay for the use, the loss and destruction of all property used, lost or destroyed by said quarantine, and all damages that might occur to the plaintiff in the way of rent or loss of business as the result of such quarantine.
The plaintiff then proceeds to set forth his loss,in a variety of items, amounting to $554.58, and at the close of his petition he asks judgment for that sum of money, as well as upon a second cause, which I will refer to later,
It is alleged here, that the court erred in sustaining the demurrer to that cause of action; and considerable argument is devoted to the idea that the city is liable for the acts of its health board and of its health officer in doing things of that kind. I shall be unable to go into a discussion of all the authorities cited. The line of demarkation between the liability of the city for the acts of its officers of that kind, is not very plain nor clear, All I can do is to refer to some cases bearing upon the subject, and say to what conclusion we have come as to this case.
The latest case upon that question in this state, is in 42 Ohio St., 628, and in the opinion delivered there, the court say:
“In an action against a municipal corporation to recover damages for an injury to the person,sustained by reason of the negligence of the agents of such corporation,it is important to ascertain with precision the duty which such agents failed to perform, or performed negligently. For, although such, corporations derive all their powers from one source, namely, the legislature, and necessarily perform their functions solely by agencies, yet there is a marked distinction as to their liability for the acts of their agents,arising from the different characters in which the corporation is charged with the performance of duties. Thus, with respect to the power to suppress riots and assemblages of disorderly persons, it has beeD uniformly held, in the absence of statu *630 tory provisions to the contrary, that the corporation is a mere agency of the state, and not liable for negligence in the performance of such duties. Upon this principle it has been held that there is no corporate liability for the acts of a mob, although the charter contains this provision as to the duties of the council, that ‘it shall be their duty to regulate the police of the city, preserve the peace, prevent riots, disturbances and disorderly assemblages.’ ”
Western Reserve College v. Cleveland, 12 Ohio St., 375.
“Nor is such corporation liable to an individual for damages resulting from a failure to provide the necessary agencies for extinguishing fires, or for negligence of officers and others connected with the fire department, although the obligation to perform such duties is imposed by the statute. ”
Wheeler v. Cincinnati, 19 Ohio St., 19.
“Nor is a city'liable for failure to enforce an ordinance with respect to the storage of oils, although its agents had notice of the failure to observe the ordinance, and notwithstanding the fact that by reason of such non-observance, the property of a citizen of the corporation was destroyed.”
Roberts v. Cincinnati, Superior Court, Gen’l. Term, 5 Am. Law Rec., 73.
“But concerning the powers and privileges which are to be exercised for the improvement of the territory within the corporate limits, and as to which the pecuniary and proprietary interests of individuals are represented,as the construction of a bridge. ’ ’
Dayton v. Pease, 4 Ohio St., 80.
“Or placing water mains in a street.”
Ironton v. Kelley, 38 Ohio St., 50.
“The liability of the corporation for negligence is largely, if not entirely measured by the liability of individuals for similar acts. This principle was applied in Newark v. Frye, decided by this court, March 22, 1881. The council of the city of Newark,being authorized to ‘guard against injuries by fire,’ and to purchase fire engines, etc., ‘and all other apparatus and instruments as shall be deemed necessary to the extinguishment of fires,’ and having under *631 consideration the propriety of purchasing the Champion Fire Engine, a fire extinguisher, appropriated money for the purchase of combustible material for the purpose of making a test of such engine. An old building was removed to the center of one of the principal streets of the city, and the same was partly filled with boxes and shavings, on which was poured a large quantity of gasoline, some of the officers of the city assisting in the work, and several members of the council being present and making no objection. On applying a match there was an immediate explosion, which destroyed the structure, killed several persons, and injured others. The court properly held the city liable,following Dayton v. Pease;” and citing in this case many others.
Undoubtedly there is difficulty, sometimes, in determining the class in which a particular case must fall; and.it is also true that there is considerable conflict in the authorities, as to the extent of such liability. We will make no attempt to settle this conflict, but have referred to the above cases for the purpose of illustrating the distinction already stated between cases falling within the police power of the corporation, and those in which it represents the property rights of the citizen. Reference to most of the cases on the subject, decided previous to 1877, will be found in Hill v. Boston, 122 Mass.,844. (And citing others.)
In that connection, I want to say that the case of Hill v. Boston, 122 Mass., is not only a leading case, but contains a very learned opinion of that court by the then Chief Justice Gray of that court, in which all the authorities at that time decided are reviewed by him, and it may be said, to a certain extent at least, that the distinction in the cases and in .the grounds of liability, is reasonably clear. It is clear that the city is not liable for the acts, or omissions to act, of its fire department engaged in undertaking to perform their duty. It is not liable for the acts or omissions *632 to act of its police officers engaged in undertaking to perform their duty. It is not liable for the acts or omissions to act of its board of health,its sanitary police, or its health officers, undertaking to perform their duty. This, I think is well settled: those being simply the agencies for carrying out the acts of government for the benefit of the citizens of the corporation, but from which no particular individual derives any pecuniary benefit.
, In the case which I have read from, the action was brought to recover damages for injury ‘sustained from the discharge of a cannon in the public street by an assemblage of disorderly persons, as alleged in the petition, which further says: “That the authorities of the village had negligently and carelessly given permission to such persons -to fire the cannon,” and took no steps to prevent such firing. The court held that the municipal corporation was not liable, even upon the principle which had been affirmed by the Supreme Court in the case0 of Newark v. Frye.
The health board is devised and designed by the legislature for the protection, so far as possible, of the public health. They are not liable if they fail to protect the public health, and the city is not liable for its acts even if it steps outside of and beyond the legitimate exercise of its true powers conferred upon it by statute and by ordinance. I cite a case on that subject from. 33 Minn. 289, where it is held “that the city was not liable for the acts or negligence of such board in the discharge of its duties, the same being public and governmental, and not corporate in their character.”
Clearly, a board of health in the state of Ohio has such power as the statute has conferred upon it, and probably has such implied power as is necessary to carry the express powers into effect. The sections of the statute relating mainly to the duties of the boards of health are 2113, 2115, and 2116,and these provide for the establishment of a board *633 of health. I should say that by the provisions of sec. 2141, as amended in 1887, the board of police commissioners is created and constituted ajjboard of health. Now, this board has authority to appoint a health officer, and it has power to appoint a clerk, and has power to appoint as many ward' and district physicians “as it may deem necessary for the care of the sick, poor and persons under quarantine surveillance, and may provide for such quarantined persons necessary attendance, nurses, medicine and support until convalescent, The board shall have exclusive control of their appointees, and define their duties and fix their salaries; and all such appointees shall serve during the pleasure of the board.” (Sec. 2115.)
Sec. 211.6: “The board of health shall abate and remove all nuisances within its jurisdiction. It may compel the owners, agents, occupants or tenants of any lot, property, building or structure upon or in which any nuisance may be, to abate and to remove the same by orders therefor,and treat the neglect or refusal to obey orders for such purpose as a misdemeanor punishable, as hereinafter provided. The board may, also, by its own officers and employes, abate ■and remove nuisances, and certify the costs and expenses of such suppression, removal or abatement, to the county auditor, to be assessed against the property, and thereby ■made a lien thereon, and collected as other taxes. The board of health may regulate the location, construction, repair, use, emptying and cleaning of all water-closets, privies, ■cess-pools, sinks, plumbing, drains, yards, pens, stables, or other places where offensive or dangerous substances or liquids- are or may accumulate. The board may create a complete and accurate system of registration of births, marriages, deaths, and interments occurring in such corporation, for the purposes of legal and genealogical investigations, and to furnish facts for statistical, scientific and ■sanitary inquiries; and when complaint is made, or a reasonable belief exists that an infectious or contagious disease prevails in any house or other locality, the board may cause •such house or other locality to be inspected by its proper *634 officers, and on discovering that such infectious or contagous disease exists, may, as it deems best, send the persons so diseased to the pest--house or hospital, or may restrain them and others exposéd within said house or locality from intercourse with other persons, and prohibit ingress or egress to or from such premises.”
Now that is a pretty broad power, actually and expressly conferred by the statute. If they find a house in which there is an infectious disease, they may quarantine it and keep the inmates within, and keep those from the outside from going in; and they may also provide that those in the immediate locality who have been exposed to this infectious disease shall take up their abode and remain there. I think there is no question of their power to do that. The thing that the board of health had undertaken to do was to quarantine that house, and it is clear to us that there is no provision of the statute under which the owner could recover, although it might be a very serious loss to him.
Upon this point there is an authority in 66 Me, 74, holding, in general terms, that a board of health may, if they think best for the safety of the inhabitants, remove persons who have dangerous diseases to a separate house, or confine them to their own — that they have authority to do that. The court say:
“It is unquestionable that the legislature can confer police powers upon public officers for the protection of the public health.” It was argued in this case that the statute was unconstitutional. “The maxim salus populi suprema lex is the law of áll courts and countries. The individual right sinks in the necessity to provide for the public good. The only question has been, as to the extent of the powers that should be conferred for such purposes. We do not think that personal injuries need be apprehended from the action of officers in cases of this kind. Experience probably shows that communities and individuals are not promptly enough aroused to the dangers that beset them in such emergencies. If an injury is inflicted upon a person *635 by the malice of the public servants, he has a remedy for it.. Apd the petition for habeas corpus is always open to him.”'
So,in this case,if these people were unjustly confined they" could have the benefit of this writ. The petition alleges, that the man had the small pox and was quarantined there,, as well as seven other persons. It does not particularly allege where these other people were, but I think it may be-assumed that they were confined in that house for some-reasonable cause. Now, all of that, we think, affords to-plaintiff no right of action againpt the city. We think the-court of common pleas was therefore correct in sustaining-the demurrer to this cause of action.
The second cause of action, while very crudely drawn and-omitting a great many allegations that it might have contained, does substantially, however, allege: “that the said“ board of health and said city, defendants, through their' executive officer and agent aforesaid, entered into a verbal contract with this plaintiff for him and his wife Ruthanai Turner, to perform the work and labor necessary for said! inmates quarantined in his said premises, No. 1607 Canton* Avenue, in said city, county and state, and that said board of health and city, defendants, would give them a reasonable-compensation for their said work and labor, and the said1 board of health and city to furnish the necessary provisions* for said persons quarantined,and pay for the same; that said Turner, the plaintiff, and his said wife might find necessary for cooking purposes, and also to furnish and pay for the-medicine necessary for said persons quarantined.” It proceeds to allege that the quarantine lasted for the period of one month; that the services referred to were rendered by the plaintiff and his wife, and were worth $150, for which-he asks judgment. This second cause omits a good, many-allegations; it does not particularly allege who was confined' in the house, who was sick, to whom these attentions were-paid'; it omits to state for what ihese services were actually. *636 rendered, Relying, as it does, upon the first cause of action, it is incomplete; but we have seen fit to look at it as if it were a cause of action stating a contract between the health officers or board of health and this plaintiff, to furnish nursing and care for these sick people in this house. And that is exactly what the statute which I have just read ■authorized the board of health to do; and if they did that in this case---entered into a contract with these people to furnish nursing, care, board and lodging, etc,, they had the power to do it, and the city is unquestionably liable.
J. Berry, and E. P. Raymond, for Plaintiff in Error.
W. A. Mills, for Defendants in Error.
The cases which were cited in argument by counsel for plaintiff in error as authorities for maintaining the first ■cause of action, do not support that, but do in fact support the right to maintain the second cause of action. The case of Rae v. Flint City, in 5 Mich. 526, is authority to the effect that where there was no board of health, the council having failed to exercise the duty conferred by the legislature in appointing one, but having employed a nurse in a ■small-pox hospital, it was held that the council had authority to employ such nurse, and authority to pay the same.. 61 Iowa, 205, was cited as bearing upon the principle that the county is liable to the city for expenses for taking care ■of a small-pox patient within its bounds; but we are satisfied that the second cause of action sets up a contract between the city and the plaintiff,and is a good cause of action, and we reverse the judgment of the court of common pleas so far as it ■sustains the demurrer of the city of Toledo, and we affirm the judgment as to all the other defendants in the case on both ■causes of action, and as to the city .of Toledo on the first ■cause of action, but reverse it as to the city of Toledo on the 'Second cause of action, and remand it to the court of common pleas for further proceedings.