## ANN BRYANT *vs*. CITY OF ST. PAUL.

### April 1, 1885.

**Municipal Corporation—Negligence of Board of Health—Liability of City.**—Where a board of health was constituted a separate body by the charter of a city, and authorized generally to make and enforce sanitary regulations for the care and preservation of health, *held*, that the city was not liable for the acts or negligence of such board in the discharge of its duties, the same being public and governmental, and not corporate in their character.

**Same—Appointment of Board.**—And it is not material whether its members derive their appointment directly from the state, or they are appointed or designated by the city government in pursuance of the charter.

Appeal by plaintiff from an order of the district court for Ramsey county, *Simons*, J., presiding, sustaining a demurrer to the complaint.

*S. P. Crosby* and *W. H. Lightner*, for appellant.

While, as a qualification of municipal liablity, it is now settled that a municipal corporation is not liable for damages arising from its exercise of powers and duties of a judicial or legislative character, (2 Dillon on Mun. Corp. §§ 949, 951; *Mills* v. *City of Brooklyn*, 32 N. Y. 489; *McClure* v. *City of Red Wing*, 28 Minn. 186,) yet, when a municipal corporation has exercised a judicial or legislative power, and undertakes the ministerial performance of the action determined upon, it becomes liable for any damage occasioned by its carelessness or negligence in this performance. *Kobs* v. *City of Minneapolis*, 22

v.33m—19

Minn. 159; *McClure* v. *City of Red Wing*, 28 Minn. 186; *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y. 463; *Lloyd* v. *Mayor*, 5 N. Y. 369; *Parker* v. *City of Lowell*, 11 Gray, 353; *Baker* v. *Boston*, 12 Pick. 184; *Thayer* v. *Boston*, 19 Pick. 511; *Child* v. *Boston*, 4 Allen, 41; *Murphy* v. *Lowell*, 124 Mass. 564; *Emery* v. *Lowell*, 104 Mass. 13; *Jones* v. *City of New Haven*, 34 Conn. 1; *Danbury & N. R. Co.* v. *Town of Norwalk*, 37 Conn. 109; *Rhodes* v. *City of Cleveland*, 10 Ohio, 159. So, in the present case, perhaps the city would not have been liable for a failure to take action to abate the nuisance, or for damages resulting from the abatement if carefully done; but it should be held liable for any injury occasioned by its negligence in the ministerial act of abatement. The decision in *Kobs* v. *City of Minneapolis* was placed on two grounds, the second of which is directly in point in this action. In *O'Brien* v. *City of St. Paul*, 25 Minn. 331, 333, the Kobs case was distinguished, and sustained upon the second ground of the decision. See, also, *Hamilton* v. *City of Fond du Lac*, 40 Wis 47; *City of Jacksonville* v. *Lambert*, 62 Ill. 519; *Kiley* v. *City of Kansas*, 69 Mo. 102.

The injury complained of arose not from mere neglect, but from malfeasance, and the city cannot escape liability. *Anthony* v. *Adams*, 1 Met. 284; *Sage* v. *City of Brooklyn*, 89 N. Y. 189; *Sheldon* v. *Kalamazoo*, 24 Mich. 383; *Rowland* v. *Kalamazoo*, 49 Mich. 553; *Hawkes* v. *Charlemont*, 107 Mass. 414; *Eastman* v. *Meredith*, 36 N. H. 284, 295.

The board of health is an agency of the city. It is composed of members of the city council chosen by the council. Sp. Laws 1879, c. 88, § 9. It is similar to other municipal agencies, through which alone most of the municipalities in this state act. *City of St. Paul* v. *Seitz*, 3 Minn. 205, (297;) *Sewall* v. *City of St. Paul*, 20 Minn. 459, (511;) *Bailey* v. *Mayor*, 3 Hill, 531; *Lee* v. *Village of Sandy Hill*, 40 N. Y. 442; *Aldrich* v. *Tripp*, 11 R. I. 141; *Barnes* v. *Dist. of Columbia*, 91 U. S. 540.

It is contended that the powers and duties of the board of health are *public* and not *corporate*. We may concede that, as a question of authority, the courts of this country have determined that there is no liability for negligence of firemen and police, although the rea-

soning of the cases is greatly at variance, and is, we think, illogical and unsound. See dissenting opinion of *Butler*, C. J., in *Jewett* v. *City of New Haven*, 38 Conn. 368, 386. The distinctions attempted to be made are admitted to be shadowy. *Midley* v. *Salem*, 19 Cent. L. J. 210; *Elliott* v. *City of Philadelphia*, 75 Pa. St 347. In New York, and in Massachusetts, Maine, and other New England states, in certain cases exemption from liability has been based upon the fact that the officers or agents were appointed in obedience to statutory enactments and were not the agents of the corporation.

In the true sense of the word, every power and duty of a municipal corporation is public. It is organized solely for the public, it can have no interest except for the public, it can legally perform no act except for the public; and when there ceases to be a public interest to be subserved, a municipal corporation will cease to have any power. We fail to see why the construction and maintenance of sewers and the maintenance of streets in proper repair are not public duties of the same character as that of abating nuisances. The interest of the city, in its so-called corporate capacity, is as great in one case as in the other.

The narrow rule laid down by the courts of the Eastern states has not been, and we submit should not be, adopted in this state. It is in conflict with the decisions of this court, which has heretofore adopted a broader rule of liability, which has operated as a check upon our public corporations in requiring of them a reasonable care and regard for private rights and property which experience has shown they would not otherwise exercise.

*W. P. Murray*, for respondent.

VANDERBURGH, J. The plaintiff in this action seeks to charge the defendant for the misfeasance or negligence of the board of health or its agents in leaving a vault upon private premises exposed and open after removing its contents, in consequence of which plaintiff, without fault on her part, fell into the vault and was injured.

By the charter of the city the board of health is constituted a separate body, composed of the city engineer, city physician or health officer, and four members of the city council appointed by the president of that body. Its powers and duties are specially defined by the

charter, and it is expressly authorized to make rules and by-laws for the government of the action of the board and its agents in the discharge of its and their duties, and it is made the duty of the police to enforce its sanitary regulations and orders. It is also clothed with authority, within the limits of the city, to enforce all laws of the state generally, relating to the care and preservation of health, and is given jurisdiction over all lakes and water-courses in Ramsey county to the same extent as within the city. City Charter, (Mun. Code, St. Paul,) c. 11, (Sp. Laws 1874, c. 1.) The provisions of the charter clearly mark and define the duties of the board as public and general in their character. Sp. Laws 1874, c. 1, subc. 11, as amended, Sp. Laws 1879, c. 88; Sp. Laws 1883, c. 2, § 18.

It is usual, either by general law or in municipal charters, to confer such authority upon local boards of health, to be exercised under the general police power of the state. And it is entirely immaterial, as affecting the question of the nature of the duties devolving upon such board, and the question of municipal responsibility, in what manner the legislature may direct and authorize its members to be appointed,—whether by the corporation or otherwise. *Maxmilian* v. *Mayor*, 62 N. Y. 160; *Fisher* v. *Boston*, 104 Mass. 87.

The charter also contains general provisions authorizing the common council, by ordinance, to remove and abate nuisances injurious to the public health, and to make regulations for the preservation of health and suppression of disease, and to make and enforce quarantine laws. Chapter 4. But it is not alleged or claimed in this case that the board of health were acting under the direction of the corporation in executing or enforcing any regulation in pursuance of which the alleged negligent act or omission occurred, or otherwise than in the exercise of the general discretionary powers conferred on it by the charter.

We are not, therefore, called on to consider the question of the liability of the municipality when it undertakes, in the exercise of its corporate powers, the performance of the act complained of, or specially directs or interferes in the premises. It is true, the complaint alleges "that the defendant, through the said board of health, caused said vault to be cleansed," etc.; but it is clear, we think, and was so

assumed in argument, that the agency of the city referred to in the matter was simply its relation to the board of health as defined by the charter, and that the board was, in fact, acting by virtue of the powers thereby conferred. Chapter 11, § 5, of the charter, under which it appears by the complaint the board proceeded in this instance, provides that "said board may order or cause any excavation, * * * room, building, premises," etc., in said city, "regarded by said board as in a condition dangerous * * * to health, * * * to be cleansed," etc. It is not, we think, to be implied that the city council took any express or affirmative action in the premises to direct the abatement of the nuisance in this case, but that it was done by the board in the ordinary course of its duties.

The question, then, presented for our consideration is whether the alleged negligence of the board created a corporate liability as against the city. The duty is imposed by the legislature upon the board of health, under the police power, to be exercised for the benefit of the public generally. It is one in which the city corporation has no particular interest, and from which it derives no special benefit in its corporate capacity. And we think it clear that, as respects an agency thus created for the public service, the city should not be held liable for the manner in which such service is performed by the board. 2 Dillon, Mun. Corp. § 976, (§ 774,) etc. It is bound to discharge its official duty, not by virtue of its responsibility to the municipality, but for the general welfare of the community, and no action will lie against the city for the acts of the board unless given by statute. *Fisher* v. *Boston, supra; Hayes* v. *City of Oshkosh*, 33 Wis. 314; *City of Richmond* v. *Long*, 17 Grat. 375; *Maxmilian* v. *Mayor, supra; Ogg* v. *City of Lansing*, 35 Iowa, 495; *Welsh* v. *Village of Rutland*, 56 Vt. 228; *Tindley* v. *Salem*, 137 Mass. 171; *Condict* v. *Mayor*, 46 N. J. Law, 157; S. C. 19 Cent. Law J. 213, and cases cited; *Smith* v. *City of Rochester*, 76 N. Y. 506.

The duties of such officers are not of that class of municipal or corporate duties with which the corporation is charged in consideration of charter privileges, but are police or governmental functions, which could be discharged equally well through agents appointed by the state, though usually associated with and appointed by the municipal

body.   The nature of the duties as public are the same in either case.

In *Kobs* v. *City of Minneapolis*, 22 Minn. 159, which we think presents a different question, but which is relied on by the plaintiff, a street commissioner dug a ditch across a street, whereby a large quantity of water was carried over to and upon plaintiff's lot from land opposite, and the city was properly held liable, because there the street commissioner was the agent of the city in the supervision and improvement of streets, with large discretionary power in the premises, and subject to control and removal by the city, and in making such ditch across the street he directly caused the flooding of plaintiff's lot.   The responsibility for the care and control of streets belonged to the city, and he was acting for the corporation in the course of his employment in and about the discharge of a corporate duty.   The city was bound so to use and control the street as not to injure the property of others.   *Oliver* v. *Worcester*, 102 Mass. 489 ; *Thurston* v. *City of St. Joseph*, 51 Mo. 510.

The cases of *City of Dayton* v. *Pease*, 4 Ohio St. 89 ; *Bailey* v. *Mayor*, 3 Hill, 531 ; *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y. 463, and other like cases, are clearly distinguishable from the case at bar.   These were actions for damages resulting from the negligence or unskilfulness of the agents of the corporation in and about the supervision or management of corporate property, or the construction of public improvements under the authority of the municipality in its corporate capacity.   The same remark will apply to cases generally where the corporation has directly authorized, participated in, or ratified (where for any cause it may lawfully do so) the alleged wrongful acts, or has derived a profit or corporate advantage therefrom, though it might not otherwise have been liable.   *De Yoe* v. *Saratoga*, 1 Hun, 341 ; *Tormey* v. *Mayor*, 12 Hun, 542 ; *Dooley* v. *Kansas City*, 19 Cent. Law J. 490 ; *Murphy* v. *Lowell*, 124 Mass. 564 ; *City of Toledo* v. *Cone*, 41 Ohio St. 149.   But no such facts appear in this case to qualify the rule of corporate liability, and as between the city and the board *respondeat superior* is not applicable.

Order affirmed, and case remanded.