### FRANK DEHANITZ v. CITY OF ST. PAUL.

July 18, 1898.

Nos. 11,114—(178).

Death by Wrongful Act—Slough Used as Dumping Ground—Fall through Crust—City not Liable.

 Within the limits of the city of St. Paul, and between the banks of the Mississippi river, is a slough more than a quarter of a mile in length, which during high water fills with water, and has no outlet. There is an addition to St. Paul known as "Kinney, Bond & Trader's Addition,"

73 M.—25

which includes this slough. The streets of this addition were dedicated to the public, but never were opened, kept or used as such by the city, although the tract is an open common. In this slough is an open basin 60 to 75 feet across, which is contiguous to James street. For a long time the city of St. Paul has used this hollow basin as a place for dumping garbage and manure, and during high water it floats upon the water and forms a crust, upon which grows vegetation similar to that upon the surrounding land. The plaintiff's intestate, D., a girl 10 years old, left James street, upon which she had been traveling, and either for convenience or pleasure attempted to cross this crust on her way to a packing house one-fourth of a mile distant, when the crust broke, and she was precipitated into the water, and drowned. From the facts it did not appear that the public had ever traveled over this dumping ground, or used it as an open common. *Held*, that the city owed no duty of protection or warning in respect to D.'s going upon this dumping ground or crust as a traveler, and hence was not liable in damages for her death.

Action in the district court for Ramsey county by plaintiff, as administrator of the estate of Mary Dehanitz, deceased, to recover $5,000 damages for the death of plaintiff's intestate. Defendant demurred to the complaint on the ground that it failed to state a cause of action. From an order, Willis, J., overruling the demurrer, defendant appealed. Reversed.

*James E. Markham* and *Carl Taylor*, for appellant.

The city owed no duty to deceased. The deceased was not injured while on the public street, but was crossing property which the city was using as a dumping ground. A permission from a property owner to a stranger to come upon his land does not impose a duty upon the owner to protect the stranger against dangers thereon. Akers v. Chicago, St. P., M. & O. Ry. Co., 58 Minn. 540; De Blois v. Great Northern Ry. Co., 71 Minn. 45; Murphy v. City, 118 N. Y. 575; Sweeny v. Old Colony, 10 Allen, 368; Clark v. Manchester, 62 N. H. 577; Knight v. Albert, 6 Barr, 472; Gillespie v. McGowan, 100 Pa. St. 144. If there was any negligence on the part of the defendant in this case, it occurred in the performance of a public governmental duty,—that of providing for the public health,—and for negligence in that respect the city is not responsible. Snider v. City of St. Paul, 51 Minn. 466; Bryant v. City

of St. Paul, 33 Minn. 289; Keuhn v. City, 92 Wis. 263; Clark v. Manchester, supra.

*Henry Conlin* and *Frank A. Hutson,* for respondent.

The general rule or principle applicable to this class of cases is that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement or inducement, either express or implied, by which they have been led to enter thereon. Sweeny v. Old Colony, 10 Allen, 368; Binks v. South Yorkshire, 32 L. J. Q. B. 26. The owner or occupant of premises owes some duty to a trespasser, and a much greater duty to a licensee; and the owner may not so maintain dangerous appliances or dangerous animals, or traps, or pitfalls, as to subject to injury persons innocently going upon the premises in either character. Emery v. Minneapolis Ind. Exp., 56 Minn. 460; Clarkin v. Biwabik-Bessemer Co., 65 Minn. 483; Driscoll v. Newark, 37 N. Y. 637; Larmore v. Crown Point, 101 N. Y. 391; Beck v. Carter, 68 N. Y. 283.

Deceased was a licensee, and entitled to protection as such. Harriman v. Railway, 45 Oh. St. 11; Broom, Max. 248; Mullaney v. Spence, 15 Abb. Pr. (N. S.) 319; Beaven v. Pender, 11 Q. B. Div. 503. The rule that a landowner is under no responsibility toward a person entering by mere permission upon his land is a satisfactory one in its application to some cases; but there are numerous exceptions to this rule. One such exception is found in cases where a trespasser's or licensee's presence has become known to the owner or occupant; after knowledge of his presence the owner or occupant is bound to exercise ordinary care to avoid injury to him. 1 Shearman & R. Neg. §§ 97, 98; Marble v. Ross, 124 Mass. 44; Daley v. Norwich, 26 Conn. 591; Lowe v. Salt Lake, 13 Utah, 91; Clarkin v. Biwabik-Bessemer Co., supra. Another exception may be found in cases where the owner of premises has acquiesced in the use thereof for a long time as a footpath, or for other purposes, by the public; such owner is liable for injuries caused by dangerous agencies thereafter put in the way thus traveled. Oliver v. City, 102 Mass. 489; Beck v. Carter, supra; Crogan v. Schiele, 53 Conn. 186;

2 Shearman & R. Neg. § 705; Clarkin v. Biwabik-Bessemer Co., supra; Emery v. Minneapolis Ind. Exp., supra; Bransom v. Labrot, 81 Ky. 638; Mackey v. City, 64 Miss. 777; Bolch v. Smith, 7 Hurl. & N. 736; Larmore v. Crown Point, supra; Driscoll v. Newark, supra; Barry v. New York, 92 N. Y. 289; Powers v. Harlow, 53 Mich. 507; Davis· v. Chicago, 58 Wis. 646; Penso v. McCormick, 125 Ind. 116; Harriman v. Railway, supra; Binney v. Carney, 46 N. Y. Supp. 307; Gaston v. Bailey, 14 Ind. App. 581; Wheeler v. St. Joseph, 66 Mo. App. 260; Kinchlow v. Midland, 57 Kan. 374; Union Pacific Ry. Co. v. McDonald, 152 U. S. 262. The rule is also modified in cases where children go upon premises as trespassers, but are allured there by some attraction, as in the well-known "turntable cases." Keffe v. Milwaukee & St. P. Ry. Co., 21 Minn. 207.

The place where deceased was drowned was a dangerous trap and pitfall. There are a great number of authorities holding property owners liable for injury caused by spring guns, and other agencies calculated to be dangerous to trespassers, and it is impossible to distinguish this case from them on principle. State v. Moore, 31 Conn. 479; Gray v. Combs, 7 J. J. Marsh. 478; Johnson v. Patterson, 14 Conn. 1; Marble v. Ross, 124 Mass. 44. But there is another class of cases more nearly allied to the present, where mantraps and pitfalls are maintained upon premises, not with the intention or design of causing injury, but in the careless use of the premises, unguarded and unprotected, and in such position that others are liable to be injured thereby. Penso v. McCormick, supra; Bennett v Railroad Co., 102 U. S. 577; Bransom v. Labrot, 81 Ky. 638; Hydraulic v. Orr, 83 Pa. St. 332; Schilling v. Abernethy, 112 Pa. St. 437; Union Pacific Ry. Co. v. McDonald, supra; Kinchlow v. Midland, 57 Kan. 374; Mackey v. City, supra; Bolch v. Smith, supra; Powers v. Harlow, supra; Davis v. Chicago, supra; Harriman ·v. Railway, supra; Loomis v. Terry, 17 Wend. 497; Binney v. Carney, supra; Gaston. v. Bailey, supra; Wheeler v. St. Joseph, supra; Clarkin v. Biwabik-B. Co., supra.

The liability of the city of St. Paul in this case is that of a property owner. The negligence or liability in this case does not spring out of the acts of the health department in performing

its duties, but out of the condition of the premises over which the city assumed control. The present case is not to be distinguished from failure to keep sewers in repair. See 2 Dillon, Mun. Corp. §§ 1049, 1051a. For injury suffered to person or property by a negligent construction of a sewer, or neglect to repair a sewer, a municipal corporation is liable. O'Brien v. City of St. Paul, 18 Minn. 163 (176); Hill v. Boston, 122 Mass. 344, 358.

The city is guilty in this case of having maintained a nuisance per se. Permitting the existence of this dangerous hole upon premises owned and controlled by the city constituted as much of a nuisance as a spring gun or trap; and a trap or spring gun would have been a nuisance, for injury caused by which the city would be liable. State v. Moore, 31 Conn. 479; Bird v. Holbrook, 4 Bing. 628; Ilott v. Wilkes, 3 Barn. & Ald. 304; Jordin v. Crump, 8 Mees. & W. 782; State v. Society, 42 N. J. L. 504; Cobb v. Inhabitants, 14 Me. 198; 1 Dillon, Mun. Corp. § 985a; 2 Wood, Nuis. § 832.

BUCK, J.

The defendant, a municipal corporation, demurred to the complaint in this action upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and defendant appeals.

There is a tract of land within the limits of the defendant city which is known as "Kinney, Bond & Trader's Addition to St. Paul." The street on said plat was dedicated to public use, but was never used nor maintained by the city, but it is alleged that for more than 20 years said platted land has been used as an open common by the public. Along the easterly boundary of said tract, bordering upon the westerly shore of the Mississippi river, is a public levee, laid out by the city, part of which is known as "James Street," dedicated and used as a highway. Extending through this tract of land for a distance of more than a quarter of a mile is a deep slough, which fills during high water, forms a large, deep pond, and has no outlet, and part of this tract is used by the city as a dumping ground for garbage and manure. At the northeasterly end of said slough is a grade made across said slough, about 15 feet wide, leaving a deep hole or basin about 60 feet across in one direction

and 75 feet across in the other direction at the northeasterly end of said slough. Said basin or hole so formed was immediately contiguous to, and encroaching partially upon, the western side of said James street and said levee at said point. Said hole or basin was of a depth exceeding 15 feet below the grade of James street and said levee, and exceeding 10 feet below the surface of the ground immediately adjoining and contiguous to said hole or basin.

During the spring of 1897, and up to and until July 3, 1897, and long subsequent thereto, the said slough and the said hole so formed and cut off from said slough by said fill, became filled with water, so that the surface of said water was about even with the surface of the ground immediately adjoining and contiguous to said hole. Prior to July 3, 1897, the said city of St. Paul authorized the public to carry and deposit garbage and manure into said hole for the purpose of filling the same, and large quantities of garbage and manure were, during the said spring and during the months immediately preceding July 3, 1897, and long subsequent thereto, hauled to and deposited upon the northerly side of said slough, and the said hole was not, up to July 3, 1897, filled up, but a large hole or basin about 50 feet across in one direction and 60 feet in the other direction still remained on said date, and filled with water. The said manure and garbage so deposited in said hole had, prior to said date, floated upon the surface of the water therein, and formed thereon a crust, covering the entire surface of the water therein; and vegetation, grass and weeds grew upon said crust and surface, leaving a body of water underneath said crust of a depth of more than 10 feet. Said crust and surface formed upon the top of said hole or basin, and had, on said July 3, 1897, the appearance of the ground surrounding and contiguous thereto. A slight and gradual slope from the main traveled portion of James street and levee extended down to the surface or crust formed upon said hole or basin, the said surface or crust so formed on said hole or basin being not to exceed three feet below the grade of James street and levee. The city of St. Paul kept a police officer as watchman to direct the public where to deposit the garbage and manure, and to warn persons of the danger of going upon this crust, but

he was absent from his post when the accident complained of occurred.

It further appears from the complaint that this crust so formed was dangerous to persons crossing said common, and that along the northerly side of the hole were various paths, which had been used by the public in traveling across said common, levee and James street. It further appears that on July 3, 1897, plaintiff's intestate, a girl of the age of 10 years, was walking along the levee, and turned from the levee to one of the paths running along the common for the purpose of going to McMillan's Packing House; that, mistaking the surface of the hole for solid ground, she followed a path leading from the levee down to the hole, then walked out upon the crust until she reached about the middle of the hole; at this point the crust broke through, and she fell into the water and was drowned.

Upon this state of facts the plaintiff claims that the city is liable, and one of the elements upon which he grounds this liability is that the whole addition was an open common, and that the people had been accustomed to travel over it. But in the complaint there is another material allegation which greatly qualifies this statement, viz., that this hole, slough or basin where the accident occurred was used by the city not once or twice, but generally, as a dumping ground for garbage and manure, and that during the time of freshets and high water this slough filled with water and became a deep pond. It seems to us that this general allegation that it was an open common and traveled by the public is so inconsistent with the specific allegations that the latter must control. It is self-evident that a basin or slough used as a dumping ground for the garbage and manure accumulating in a large city, and subject to be covered by water during every freshet or high water, without an outlet for such water, could not, in the very nature of things, be used as a public or open common. The repulsive features of the place and its surroundings all lead to the conclusion that it could not be used by the public for business, and certainly not for pleasure, but only for a dumping ground as above stated. Traveled paths could not well be formed over this accumulation of filth in low water, and in high water it was certainly unsafe, even for

this young girl, only 10 years old. Wherein and just how this slough was used by the public as an open common is not stated. Carriages could not well pass over it, and that pedestrians would use a garbage dumping ground and manure pile as a traveled path is clearly improbable. Hence the allegation that it was an open common used by the public loses its force as an admission by the demurrer when we consider the other facts stated in the complaint.

Not only is this so, but we consider it substantially untrue that this basin where the accident occurred was used by the public as an open common, over which there were traveled paths. This girl had been traveling along James street, turned therefrom, went upon this crust formation, and, when some 25 to 35 feet from said street, fell through this crust, and was drowned. She was not upon a public street, but had left it for the purpose of going to a packing house about a quarter of a mile distant. This hole or basin was some 50 or 60 feet across each way, and when nearly in the center of it the accident occurred.

We are of the opinion that the city is not liable under this state of facts. It does not appear that there was any invitation by the city for the girl to go upon this crust by reason of the manner the ground was used. The nature of the ground and the offensive material dumped there all tended strongly to show that the place was not used, nor intended to be used, by the public for any purpose other than that stated in the complaint. It is quite evident that she left the public street for her own convenience or pleasure. The city was not using the ground for any purpose which would allure or entice an infant or adult to go thereon, and nothing of the kind was upon the premises.

While it is alleged in the complaint that she followed a path from the levee down to and upon the crust so formed until she reached the middle thereof, where she was precipitated into the water, yet it is not alleged that it was a publicly traveled path, nor that it was ever traveled by any person whatever; and when we consider the further allegation of the complaint that this crust was formed by the garbage and manure floating upon the water we can readily understand the guarded language of the complaint in alleging that

it was merely a path, without alleging it to be the one used and traveled by the public.

Nor does it appear what possible inducement there could be for the public to leave the public street, and travel along a path over a floating garbage and manure pile, or upon ground notoriously used for such purpose. The city owed no duty of protection in respect to her going upon this dumping ground or crust as a traveler. Although it kept a watchman there generally, it was under no obligation to do so, and hence no liability arises by reason of his being absent at the time of the accident. It was performing a public corporate duty in removing garbage and manure from the business and residence parts of the city as a protection against disease.

However sad may be the untimely death of this young girl, yet under the facts and the well-settled rules of law the order denying the defendant's motion for a new trial must be reversed. We have not deemed it necessary to discuss the authorities cited by either counsel, as the facts clearly demand a reversal of the order. It is sufficient to say that the rule laid down in the well-known "turntable cases" has no application to the case at bar.

Order reversed.