HOLLMAN, Respondent, vs. THE CITY OF PLATTEVILLE and another, Appellants.

*October 13 — November 1, 1898.*

*Cemeteries: Rights of lot holders: Control by cities: Trespass.*

1. One who has taken possession of a lot in a public cemetery and occupied and used the same for the burial of his dead, with the express or implied consent of those in proper control of the same, although he may not have paid anything nor have acquired title to the lot, has yet such an easement or license that he can maintain trespass for any invasion or disturbance of it, whether by the owners of the fee or by strangers.

2. A city whose common council has, under the provisions of secs. 1439, 1453, R. S. 1878, the control of a public cemetery, with power to make regulations for the management and control thereof, and to require lot owners or occupants to remove or rearrange trees, etc., so as to comply "with such regulations as the common council shall have prescribed, on giving reasonable personal notice in writing to do so," makes itself liable in damages to a lot owner or holder, if it causes trees on his lot to be cut down without having first adopted any such regulations or given such lot holder the required notice. Its acts in so doing are not *quasi*-judicial, so as to preclude liability therefor.

3. A city which, in the attempted exercise of its statutory powers relative to a public cemetery within its limits, in an unlawful manner authorizes a wrongful act to be done by its servant and adopts such act, must be held to respond for the actual damage done by him.

APPEAL from a judgment of the circuit court for Grant county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

This case arose upon the following state of facts, as appears from the certificate of the circuit judge who tried the case:

In 1845 the town of Platteville acquired a tract of land for the purposes of a cemetery. Previous to 1854 the village (now city) of *Platteville* succeeded to the possession and control thereof, which it still retains, said cemetery being within its limits. Said cemetery was never platted. No deeds or written burial permits were ever made to any person. No rules or regulations concerning said cemetery were ever made by the authorities in charge. No money was ever paid for the privilege of burial in said cemetery. It had always been the custom for persons burying dead in said cemetery to select for that purpose any unoccupied ground within said cemetery, without paying therefor. In 1866 the plaintiff's mother was buried in said cemetery, according to said custom. In 1867 the plaintiff, who then resided within the limits of the village of *Platteville*, inclosed the grave of his mother and those of two of his sister's children, previously buried, and sufficient ground east of said graves for another row of graves, with a fence, and planted four evergreen trees, two at the east corners of said inclosure and one near the middle of the north line, and one near the middle of the south line thereof. In 1867 the plaintiff's brother was buried by the side of his mother, and in 1875 the plaintiff's father was buried between the two. The fence around the inclosure was removed by the plaintiff after remaining about twelve years. In 1887 the plaintiff's sister was buried to the east of his brother's grave, near the north line of what had been said inclosure, one of said trees being removed by her relatives in said burial. Ever since the lot was fenced the plaintiff has cared for and attended the same, and has been in possession of the same, claiming it as a family burial lot. In 1894 the defendant city, by its servant, its codefend-

ant, in the course of general improvements of said cemetery, for which money had been appropriated by said city, removed the three remaining trees without notice to the plaintiff, and, as the jury found, to the damage of said lot $50.

Is the judgment for the plaintiff for damages for the removal of said trees supported by the foregoing facts, the question of the amount of damages having been submitted to the jury subject to the opinion of the court?

For the appellants there were briefs by *E. E. Burns*, city attorney, and oral argument by *J. W. Murphy*. They argued, among other things, that the respondent had no title to the land, nor to anything growing upon it. The city could convey only a right to use for burial purposes. *Perkins v. Lawrence*, 138 Mass. 361; *Page v. Symonds*, 56 Am. Rep. 481; *Bessemer L. & I. Co. v. Jenkins*, 111 Ala. 135; R. S. 1878, secs. 1439, 1448. His right, if any, extended only to the land actually occupied by him. R. S. 1878, sec. 4213. The powers given by law to the common council as trustees were of a *quasi*-judicial nature, and its servants cannot be held responsible for mistakes in judgment. *Kendall v. Stokes*, 3 How. 87, 98; *Allen v. Chippewa Falls*, 52 Wis. 430. The city cannot be held liable for the acts of its officers in this case. The officer appointed in obedience to law to perform a public service, in which the city has no particular interest and from which it derives no special benefit in its corporate capacity, cannot be deemed the servant or agent of the city, for whose negligence it can be held liable. *Hayes v. Oshkosh*, 33 Wis. 314; *Wallace v. Menasha*, 48 id. 79; *Schultz v. Milwaukee*, 49 id. 254; *Calwell v. Boone*, 33 Am. Rep. 154; *Maxmilian v. New York*, 62 N. Y. 160; *Hafford v. New Bedford*, 16 Gray, 297.

*T. L. Cleary*, for the respondent.

BARDEEN, J. This case must be considered and determined upon the certificate of the circuit judge. The recovery was less than $100, and the case could only be brought here for

review upon a certificate of the trial judge, pursuant to sec. 3047, Stats. 1898. The alleged bill of exceptions sent up with the record cannot be considered, and should have been stricken therefrom. As it appears to us from the statement of facts, the only question we need determine is whether the defendants are liable in damages for the cutting of the trees on the cemetery lot in question. As we view the case, it becomes unnecessary to determine whether plaintiff has the legal title to the lot or not. He entered into possession of the same in 1867, inclosed it by a fence, and planted the trees that were cut down, and, after the fence was removed, has cared for and attended to the lot, "and has been in possession of the same, claiming it as a family burial lot," ever since. Whether his right thereto be considered a mere privilege, right, or easement for the burial of his dead, or whether his rights have ripened into absolute title by adverse possession, it matters not for the purpose of this case. Some courts go so far as to hold that such an easement, as well as title to the soil, may be acquired and perfected by prescription, the right to which cannot be defeated by the owner of the soil. *Hook v. Joyce*, 94 Ky. 450. Others say that where the interment is in a public cemetery, when the parties whose duty is to give burial are not the owners of the soil, they would have no higher right than a mere easement or license. 3 Am. & Eng. Ency. of Law, 50, and cases cited. In any event, so long as the license continued, the lot holder could maintain trespass for any invasion or disturbance of it, whether by the grantors or strangers. *Partridge v. First Independent Church*, 39 Md. 631. A case which reviews the authorities at length, and contains an ample discussion of the rights of lot claimants in cemeteries, is *Bessemer L. & I. Co. v. Jenkins*, 111 Ala. 135. It is there said: "It would seem, therefore, to accord with right principle and authority, that where one is permitted to bury his dead in a public cemetery, by the express or implied consent of those in proper control of it,

Hollman vs. The City of Platteville and another.

he acquires such a possession in the spot of ground in which the bodies are buried as will entitle him to action against the owners of the fee or strangers, who, without his consent, negligently or wantonly disturb it." The plaintiff, having a right to and the possession of the lot in question, could certainly maintain an action against any person who unlawfully disturbed or interfered therewith.

But it is said that the statute (sec. 1439, R. S. 1878) gives the right to the common council to regulate the cemetery, as trustees, and that their action in that regard was *quasi*-judicial, and ought not to be interfered with. A perfect answer to this contention is found in sec. 1453, which grants the power to require any "lot owner or occupant to remove, rearrange, rebuild or repair any such trees or shrubs planted, fences, structures, headstones, or monuments, so as to comply with such regulations as they shall prescribe, by giving reasonable personal notice in writing so to do;" and, if they fail to do so, they may cause it to be done, and recover the expense thereof from the person liable to such duty. This presupposes the adoption of proper regulations for the management and control of the cemetery, which seems not to have been done in this case. Neither was there any pretense that any notice was given plaintiff to rearrange or remove the trees in question. The acts of the city were wholly without the lines of the statute, and without legal justification.

It is further urged that the city was engaged in an act for the public benefit, in which it had no particular interest, and from which it derived no special advantage in its corporate capacity, and therefore it cannot be held liable. The defendant city is a municipal corporation, charged with certain public duties in relation to the state and the public generally, as well as with obligations that are local and relate to the welfare of its members, and the regulation of its internal affairs. In the administration and execution of its legisla-

Hollman vs. The City of Platteville and another.

tive and governmental powers — such powers as are, in their very nature, public and in aid of the state — it sustains no liability to one suffering injury, if such powers are imper fectly or negligently executed. Dillon, Mun. Corp. §§ 965, 966. But, as respects the performance and execution of mere corporate duties, the rule is different. When the act done is within its charter powers and relates to the administration of local or internal affairs, as distinguished from its legislative, discretionary, or *quasi*-judicial duties, the rule of *respondeat superior* applies, and the city will become liable for the act of its servants and agents, which it has authorized or adopted. Dillon, Mun. Corp. § 980. In this case there can be no question but that the defendant *Stephens* was the servant of the city and was acting under its authority. The answer expressly admits that the acts done by him were done under the direction and authority of the common council. The city had a right to adopt reasonable regulations for the management and control of the cemetery. It also had the power to enforce its regulations in conformity to the law granting such power. It had no right or authority to disturb or invade the possession of the lot held by plaintiff except in pursuance of its statutory authority. Its fault lay in the attempted exercise of its statutory powers in an unlawful manner, and, having authorized the act done and having adopted the wrongful act of its servant, as appears by its answer, the city must be held to respond for the actual damage done. Dillon, Mun. Corp. § 972; *Wilde v. New Orleans*, 12 La. Ann. 15. See *Wilson v. Mineral Point*, 39 Wis. 160; *Thayer v. Boston*, 19 Pick. 511; *Squiers v. Neenah*, 24 Wis. 588; *Crossett v. Janesville*, 28 Wis. 420.

*By the Court.*— The judgment of the circuit court is affirmed.