## PETER BRANTMAN v. CITY OF CANBY.[1]

November 22, 1912.

Nos. 17,921—(97).

**Question for jury.**

Plaintiff suffered injuries from a gas explosion in his cellar. The evidence presented a question of fact for the jury as to whether or not such gas had escaped from a leak in the pipe supplying a street lamp.

**Liability of municipal corporation for its negligence.**

Where a city undertakes to serve both public and private convenience by maintaining a municipal lighting plant to light its street, and also furnish gas to private consumers, it is not exercising a governmental function so as to escape responsibility for negligence in the management of such plant whereby an injury has been caused to the person or property of an individual.

Action in the district court for Yellow Medicine county to recover $2,500 for personal injuries. The answer alleged that the injury was caused solely by plaintiff's own negligence. The case was tried before Powers, J., who granted defendant's motion to direct a verdict in its favor. From an order setting aside the verdict and granting a new trial, defendant appealed. Affirmed.

*Johnson & Lende,* for appellant.

*Tom Davis, Ernest A. Michel, D. L. Kennedy* and *John I. Davis,* for respondent.

HOLT, J.

The city of Canby, Minnesota, maintains a municipal gas plant to light its streets, and also to sell gas to private consumers. Plaintiff was occupying a building fronting on the main street in the city; in

[1] Reported in 138 N. W. 671.

Note.—As to liability of municipality for death caused by negligence in the performance of a governmental function, see note in 38 L.R.A. (N.S.) 151.

As to distinction between private and public functions of municipality, see note in 1 L.R.A. (N.S.) 665.

front of the building and across the sidewalk was a street lamp; the gas from this lamp was supplied by a pipe leading from the gas main in the street and was laid some two feet below the surface, entering into the lamp-post at a somewhat greater depth through a "goose neck" or bent pipe of lead designed to prevent breaks when frost would heave the ground. Nearly parallel with the pipe leading to the street lamp, and some twelve or eighteen inches from it, was a consumer's service pipe extending under the sidewalk and leading to within three feet of the cellar stone wall of the building occupied by plaintiff, then up to the surface and through the floor which extended about four feet over the cellar wall, thus entering the restaurant conducted by plaintiff. Plaintiff was injured by a gas explosion when, having occasion to go to the cellar, he struck a match therein. He claims that the defendant negligently permitted a leak to occur in the pipe which supplied the street lamp, where such pipe was attached to the goose neck, that the gas from such leak followed along the service pipe, the ground there being loose and porous, and permeated the ground and wall into the cellar. When the testimony was all in, the court directed a verdict for defendant, but afterwards granted a new trial. Defendant now appeals.

The appellant claims that there was proof of a leak in that part of the service pipe over which defendant had no control, therefore a verdict in plaintiff's favor could rest on no better foundation than a mere guess as to whether the gas in the cellar came from the leak near the goose neck or came from that part of the service pipe under plaintiff's exclusive control. From an examination of the testimony we are of opinion that, had the jury found that the gas escaped from that part of the equipment over which defendant exercised sole dominion, it could not have been said that the finding was without support.

The main contention of appellant is: Assuming that the gas came from the leak at the connection with the street lamp, and that the leak was due to defendant's negligence, the city is nevertheless not liable to the individual injured in respect to the operation of its lighting system, because the negligence occurred in the performance of a governmental function, namely, lighting its streets for the public

good. In any event, that it was not a leak in that part of the plant which had any connection with the service to private consumers. At the trial such was the view taken by the court, who concluded that the case was ruled by Miller v. City of Minneapolis, 75 Minn. 131, 77 N. W. 788. There plaintiff sued the city, claiming that it had negligently permitted the hydrant of its water system to become choked or clogged so that the fire department could not obtain water to extinguish the fire that consumed plaintiff's property. A demurrer to the complaint was there sustained on the ground that, although the city was not compelled to maintain a water system, still it was discharging a governmental duty in maintaining a fire department, and "for the purposes of protection from fire, the water plant and service must be regarded as a part of the fire department." In the instant case the gas lighting plant was maintained by the city, not only for lighting the street, but also to supply private consumers. Lighting its streets is not a governmental duty placed on the city. Miller v. City of St. Paul, 38 Minn. 134, 36 N. W. 271. It has the privilege and power to undertake the burden, but it may refuse or may grant a franchise therefor to others. We apprehend that if a franchise had been granted by the city to construct and operate this plant, and gas had escaped therefrom causing injury, an action would lie against the one who held the franchise. Gould v. Winona Gas Co. 100 Minn. 258, 111 N. W. 254. The city here conducted its plant precisely as would one to whom it might have granted a franchise, with perhaps this difference—that a municipality does not expect much profit, if any at all, from its ventures to serve the public and private convenience. The facts in this case do not sustain the contention that the city, in operating this lighting plant, was performing a purely governmental function, even if it be conceded that a distinction may here be made between that part of the equipment which served the public and that which served private consumers. Such a separation or distinction we regard unimportant.

In this state a city, in maintaining a board of health, a police or a fire department, discharges a governmental function pure and simple, and we believe as to these or similar functions, it has no power to escape the burden imposed by granting a franchise to any-

one to perform in its place. But as to furnishing water, light, etc., for private consumers and public purposes combined, the furnishing of which is not imposed by law as a governmental duty, the city, if it undertakes so to do, assumes a position to those injured through its negligence therein which is not different from what would be the position of one to whom it had granted the right to furnish water or light. Snider v. City of St. Paul, 51 Minn. 466, 53 N. W. 763, contains some observations indicating that this defendant may not claim immunity from the consequences of negligence, because it was performing a governmental duty in operating this plant.

In this day, when the doctrine of public ownership by municipalities of public utilities is rapidly gaining ground, so that nearly all public utilities, so-called, which have heretofore been supplied by those who have been granted franchises therefor are now overtaken by the municipalities themselves, it occurs to us that private rights may be jeopardized unless it be held that in overtaking such utilities the municipality must exercise the same care towards the person and property of the individual that was required of one having obtained a franchise to maintain the same utility. The conclusion herein arrived at is supported by able opinions in Dickinson v. City, 188 Mass. 595, 75 N. E. 68; Esberg v. City, 34 Ore. 282, 55 Pac. 961, 43 L.R.A. 435. It may also be stated that in Hodgins v. Bay City, 156 Mich. 687, 121 N. W. 274, the language relied on to support appellant's position in this case, was obiter.

Order affirmed.