CHRISTIAN and wife, Appellants, vs. CITY OF NEW LONDON, Respondent.

*February 12—March 12, 1940.*

124

For the appellants there was a brief by *Walter Melchior* of Appleton and *Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Mr. Theo. W. Brazeau* and *Mr. Melchior.*

For the respondent there was a brief by *Giles H. Putnam,* city attorney, and *E. W. Wendlandt* of New London of counsel, and oral argument by *Mr. Putnam* and *Mr. Wendlandt,* and by *Mr. Robert J. Cunningham* of Janesville.

FAIRCHILD, J.  No bill of exceptions was settled in this case to preserve the testimony.  Reference must be to the record and the findings as they appear in the special verdict and the rulings of the court.  *Fidelity & Deposit Co. v. Madison,* 202 Wis. 271, 232 N..W. 525; *Ellis v. Frawley,* 165 Wis. 381, 161 N. W. 364; *Hoff v. Hackett,* 148 Wis. 32, 134 N. W. 132; *Parke, Austin & Lipscomb v. Sexauer,* 204

Wis. 415, 235 N. W. 785. The answers by the jury to the questions submitted to them by the trial court are to the effect that the plaintiffs' minor son while at a roadside in the city of New London was "fatally injured by coming in contact with a live wire of the defendant's street-lighting system line which extended along the side of the highway;" that the wire was inadequately maintained at a place where the defendant "should have foreseen that children might probably be injured by coming in contact with said wire;" and that the negligence of the defendant was a cause of the injury. These facts must be taken to have been proved at the trial and do sustain a judgment in plaintiffs' favor, unless the city is to be excused from liability because the broken wire happened to be used for lighting the streets which is claimed to be a governmental function. The trial court refused to substitute other findings than those made by the jury. In a memorandum opinion the learned trial judge, after referring to the fact that the defendant had moved for a change of answers made by the jury, said: "The only question in this case, which determines whether or not the plaintiffs are entitled to judgment on the verdict, is whether or not the defendant was acting solely in a governmental capacity at the time of the accident."

The doctrine of *respondeat superior* has been applied in this state to municipalities in those cases where the city has been negligent in a proprietary enterprise which may or does result in furnishing a benefit to the city. *Mulcairns v. Janesville,* 67 Wis. 24, 29 N. W. 565; *Hollman v. Platteville,* 101 Wis. 94, 76 N. W. 1119; *Piper v. Madison,* 140 Wis. 311, 122 N. W. 730; *State Journal Printing Co. v. Madison,* 148 Wis. 396, 134 N. W. 909. Compare also *Boutlier v. City of Malden,* 226 Mass. 479, 116 N. E. 251; *Dickinson v. Boston,* 188 Mass. 595, 75 N. E. 68; *Esberg-Gunst Cigar Co. v. Portland,* 34 Or. 282, 55 Pac. 961; *Village of Palestine v. Siler,* 225 Ill. 630, 80 N. E. 345; *Stedwell v. Chicago,* 297 Ill. 486, 130 N. E. 729; *Johnston v.*

*Chicago,* 258 Ill. 494, 101 N. E. 960; *Evans v. Sheboygan,* 153 Wis. 287, 141 N. W. 265; 43 C. J. p. 930, § 1705; 3 Cooley, Law of Torts, p. 245, § 450, note 50; Harper, Law of Torts, pp. 658, 662, § 295; and cases cited in 1 L. R. A. (N. S.) 665.

The city of New London is operating a plant for the production, transmission, and delivery of light and power. The legislature has recognized this activity of a municipality as a public utility. Sec. 196.01, Stats. This activity of the municipality places it in the commercial world, for we find no distinction between a utility owned by a corporation, a company, or an individual and a utility owned by a village or city which in any way would exempt it from being classified as a proprietary affair. This city-operated power plant is not under the protection of the doctrine which exonerates a city from liability for the negligence of its agents where the acts done are in the performance of a "governmental function." Here the city admits that it is a utility, but seeks to divide its individuality as such so as to preserve the "governmental function" protection in so far as it lights its own streets. But what occasion is there for such subdivision of its acknowledged business—that of furnishing its customers with light and power? The city is operating as a public utility, and the fact that it is one of its own customers does not create a division of its plant into proprietary and governmental departments. In *Brantman v. Canby,* 119 Minn. 396, 138 N. W. 671, it was held that where a city undertakes to serve both public and private convenience by maintaining a municipal lighting plant to light its streets and supply private customers, it is not exercising a governmental function so as to escape liability for negligence in the management of the plant whereby an injury has been caused to the person or property of an individual.

The rule against permitting the defendant to segregate some lines and call them governmental and leave the rest to be described as proprietary is sustained by reason and

authority. To make recovery for an injury resulting from the negligence of the defendant in operating its plant depend upon which wire happened to fall would be to ignore the true relation of the utility to the public, and to overlook the rather obvious fact that the hazard of the business in which the city is engaged is the same, as far as the individual is concerned, no matter who owns the utility. The city of New London voluntarily undertook the enterprise for its private benefit and its agents were not engaged in the discharge of a governmental function. They were engaged in the manufacture of light and power in its plant and in controlling and delivering its product to the public. The private or corporate capacity and the governmental capacity are indistinguishable so far as control, maintenance, and delivery of the power are concerned. In the case of *Piper v. Madison, supra,* the question here directly involved was not presented as pointedly as it is now. In that case the city under legislative authority constructed a system of waterworks for public and private use. The business was placed in charge of a board of commissioners, and when damage resulted the injured person brought his action on the theory that the agents of the city were negligent and the city responsible for damages. It was held that responsibility for the acts of the persons representing the city in its business fell upon the city, and it was said at page 315 : "The fact that the city may also use the waterworks for protection against fire does not relieve it from liability for negligent acts of its servants or agents in the conduct of this business, except for such acts as are performed by them in the actual work incident to extinguishing fires."

The case of *Strohmaier v. Wisconsin Gas & Electric Co.* 214 Wis. 564, 253 N. W. 798, was decided, in so far as the village of Pewaukee was concerned, upon the ground that an independent contractor retained control of the work, and that the village was not liable. It was also stated at page 570 that the work being done "solely to supply a fire hydrant to

be located in the public street" was in the pursuance of the governmental function of furnishing fire protection. It does not appear from the opinion in that case that the municipality was there engaged in conducting a business in a proprietary capacity, but if that fact did exist, the decision in that case would then be at variance with the ruling now made and to that extent is overruled.

The doctrine of the cases dealing with municipally owned waterworks is that the municipality must use proper care in maintaining the means of storage and distribution, or respond in damages to anyone injured. The words "in the actual work incident to extinguishing fires" used in the *Piper Case, supra,* emphasize this doctrine, for they relate to the instances where there is brought into the services of the community a force which is separate and distinct from the transmission and delivery of water for which the utility existed. It is considered that when the lighting of streets is done by a utility created to conduct a commercial business, the relation of the city owning the utility to one injured by the negligence of the utility employees is not that of governor and governed, and liability for such injury must be determined on the basis of a proprietary enterprise conducted by the community.

The law as established in the cases cited requires a ruling that on the facts as shown the verdict entitled the plaintiffs to judgment. As to the plaintiffs' claim that there is a treble liability because of the action of the city's agents, we are of the opinion that this case goes on the theory of common-law negligence; and that no violation of sec. 196.64, Stats., is shown to exist. This point is controlled by the law as announced in the case of *Krom v. Antigo Gas Co.* 154 Wis. 528, 140 N. W. 41, 143 N. W. 163, and *Highway Trailer Co. v. Janesville Electric Co.* 187 Wis. 161, 204 N. W. 773.

The cause of action in favor of the plaintiff arises because of the negligence shown to exist on the part of the city

utility. We do not find anything in the case which would warrant holding that a nuisance was created or maintained by the city.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant judgment on the verdict for plaintiffs for damages as assessed by the jury and for funeral expenses as fixed by the court.