**GILLIES v. CITY OF MINNEAPOLIS et al.**
**Civil Action No. 1715.**

District Court, D. Minnesota,
Fourth Division.

June 17, 1946.

John H. Farley, of Minneapolis, Minn. (M. McElroy and William F. LeVeque, both of Tacoma, Wash., of counsel), for plaintiff.

R. S. Wiggin, City Atty., and Mr. Carsten L. Jacobson, Asst. City Atty., both of Minneapolis, Minn., for defendant City of Minneapolis.

NORDBYE, District Judge.

The parties have entered into a stipulation of facts, upon which the motion

468

for summary judgment is predicated. This action is brought by plaintiff to recover damages from the City of Minneapolis and one Marcum for injuries allegedly sustained by plaintiff when he was a patient in the Minneapolis General Hospital. It is contended that the defendant Marcum, an orderly employed in the hospital by the City, committed an unjustifiable assault on the plaintiff and that the City is responsible for the negligence of its orderly. The position of the City is that it maintains and operates the Minneapolis General Hospital as a purely governmental function, and for that reason is not liable regardless of the alleged unlawful conduct of Marcum and regardless of any negligence of its administrative officers in his employment. The issue submitted, therefore, on this motion is whether the maintenance and operation of the hospital by the City is purely a governmental function, or whether its operation relates to the City's proprietary affairs or powers. It is elementary in this State that a city is not liable for torts arising out of the performance of its governmental functions, except as to negligence in the care of its streets and sidewalks. Ackeret v. City of Minneapolis, 129 Minn. 190, 151 N.W. 976, L.R.A.1915D, 1111, Ann.Cas.1916E, 897. But, on the other hand, if the maintenance and operation of a hospital by a city under the facts herein is a private or corporate function, there is no immunity for its torts. Keever v. City of Mankato, 113 Minn. 55, 129 N.W. 158, 33 L.R.A.,N.S., 339, Ann.Cas.1912A, 216; Brantman v. City of Canby, 119 Minn. 396, 138 N.W. 671, 43 L.R.A.,N.S., 862; Frasch v. City of New Ulm, 130 Minn. 41, 153 N.W. 121, L.R.A. 1915E, 749; Storti v. Town of Fayal, 194 Minn. 628, 261 N.W. 463.

It appears that on or about July 11, 1945, plaintiff, a non-resident of Minnesota, but visiting relatives in this State, was found wandering in a helpless, mentally deranged condition in the Village of Mound, Hennepin County. His mental condition was such that the sheriff of the county removed him to the Hennepin County Jail, and while so confined he became so violent that the jailer called the matter to the attention of the court commissioner of the county. Pursuant to statutory authority (Minn.Stat.1941, § 525.-751), the court commissioner ordered the removal of the plaintiff to the Minneapolis General Hospital and his temporary confinement in the mental ward thereof for observation and examination and the necessary restraint pending proceedings for his commitment as an insane person. It was during such restraint, and on July 22, 1945, that he alleges he was assaulted by the orderly, which required the removal of one of his eyes. On August 14, 1945, in statutory proceedings before the court commissioner, he was found to be suffering from a manic depressive psychosis, and was adjudicated insane and committed to the State Hospital at Rochester, Minnesota.

The City of Minneapolis is under a home rule charter, adopted pursuant to Section 36, Article 4, of the Constitution of the State of Minnesota and the statutes enacted in pursuance thereof. By virtue of said charter, it was empowered to provide hospitals and hospital grounds for the City, and, pursuant to said power, it maintained and operated the Minneapolis General Hospital. According to the stipulation entered into herein, the Board of Public Welfare under the city charter is empowered to exercise general supervision and administrative control of all activities and agencies carried on and maintained by the City for (1) the promotion and preservation of health, and the prevention and suppression of disease in the City; (2) the care, conduct, management and operation of all hospitals, dispensaries, and clinics maintained by the City and the furnishing by the City of medical and dental service to the poor; (3) the relief of the poor, aged and indigent, and the maintenance, management, control and operation of all public institutions established by the City for the relief of the poor, aged and indigent. It is further stipulated: "That during all of the said times, the said Board of Public Welfare, pursuant to the said powers, exercised general supervision and administrative control over the said Minneapolis General Hospital." Moreover, it appears from the stipulation that the City of Minneapolis is under the statutory duty

of providing for the general support and medical, hospital and nursing care of its poor persons, and it is recited in the stipulation that "the principal function of the said Minneapolis General Hospital is to carry out the defendant City's said statutory duty in providing for the medical, hospital and nursing care of its poor, aged and indigent."

It appears from the admitted facts that the expense of maintaining said hospital is, and always has been, mainly paid from the tax collected funds of the City, and in the year 1945, which is the year under consideration, the cost of maintaining the hospital, exclusive of the City's investment in its buildings and grounds, was in excess of $1,000,000, but that during said year its income was less than $75,000 from charges made against patients cared for therein and that the balance of said operating costs were paid out of tax collected funds of the said City.

The test to be applied as taught by the Minnesota Supreme Court in determining whether an enterprise is governmental or proprietary is not always clear. Minnesota, however, makes no distinction between mandatory and permissive governmental functions. Mokovich v. School District, 177 Minn. 446, 225 N.W. 292. Indeed, it would seem that no hard and fast rule can be enunciated in light of the various rulings of the Minnesota Supreme Court. See, Minnesota Law Review, Vol. 26, p. 334, et seq. Generally, however, it may be stated that, where a city is engaged exclusively in the discharge of its public duties, it does not act in a private capacity, because under such circumstances it acts in the place of the State and exercises its political authority. Lane v. Minnesota Agricultural Society, 62 Minn. 175, 64 N.W. 382, 29 L.R.A. 708. From the early beginnings of this State, it has been recognized that the duty to take care of the poor and indigent devolves upon certain public officials who act in their representative capacity. Robbins v. Town of Homer, 95 Minn. 201, 103 N.W. 1023. In the maintenance of the Minneapolis General Hospital, there are no attributes of any private business. No profit is derived from its activities, and the main-

tenance and operation of the hospital relates solely to the public good—for the good of all. The maintenance of health and the prevention of disease and the curbing of pestilence and plague are all within the scope of the activities of the hospital. 4 Dillon, Municipal Corporations, 5th Ed., § 1661, states:

"The power or even duty on the part of a municipal corporation to make *provision for the public health and for the care of the sick and destitute,* appertains to it in its governmental or its public, and not in its corporate, or as it is sometimes called, private capacity. And therefore where a city, under its charter, and the general law of the State enacted to prevent the spread of contagious diseases, *establishes a hospital,* it is not responsible to persons injured by reason of the misconduct of its agents and employees therein; * * *."

McQuillin, Municipal Corporations, 2d Ed., Vol. 6, § 2796, p. 1060, makes the following observation:

"That there are some duties the nature of which as governmental is too well settled to be disputed, such as the establishment and maintenance of schools, hospitals, poor houses, fire departments, police departments, jails, workhouses, and police stations, and the like. In fact, duties connected with the preservation of the peace or health, or the prevention of the destruction of property by fire are all governmental duties, without question, and hence there is no municipal liability for torts in connection therewith, or at least not under ordinary circumstances."

The Supreme Court of Minnesota has not ruled on the precise factual situation presented herein. Plaintiff relies, however, on Borwege v. City of Owatonna, 190 Minn. 394, 251 N.W. 915. But the facts in that case are entirely different from the matter now under consideration. There, the city hospital was a revenue producing institution. As the court observed (page 395 of 190 Minn., page 915 of 251 N.W.):

" * * * No nonpay patients were knowingly received. Occasionally, but not often, hospital bills could not be collected from a few of the patients. The money received was placed in a hospital fund, and

was not used for other city purposes. Charity patients of the county were paid for by the county board. Plaintiff was a pay patient."

And in pointing out why the maintenance and operation of the hospital was not a governmental function, the court stated (page 395 of 190 Minn., page 915 of 251 N.W.):

"In the operation of the hospital under the circumstances here, the city was exercising its corporate proprietary powers. The hospital was not such a one the operation of which would properly come within the governmental function for the protection of health and suppression of disease. It was a general hospital operated for the private advantage and convenience of the inhabitants of the city. That its operation may incidentally to some extent protect society from 'sickness and death' does not relieve the city from liability. Its main purpose was to care for and cure individual cases, which is the function of any hospital, whether it be a city hospital or a private hospital. When a city engages in activities which are of a nature ordinarily engaged in by private persons and which subjects private persons to liability for negligence, the city is likewise liable for negligence."

In short, the City of Owatonna was operating a hospital entirely comparable with any private hospital and was engaged in an enterprise which is ordinarily maintained and operated by private charitable concerns. The only inference to be drawn from the Borwege case is that, if the hospital had been one which had been operated by the city in performance of its statutory duty in taking care of the medical needs of the poor and indigent, and as such was a tax supported institution, it would have had complete immunity from its torts.

It has been held in this State that a city maintains its parks in a governmental capacity, and no liability attaches by reason of its negligence in their maintenance and operation. St. John v. City of St. Paul, 179 Minn. 12, 228 N.W. 170; Emmons v. City of Virginia, 152 Minn. 295, 188 N.W. 561, 29 A.L.R. 860; Howard v. Village of Chisholm, 191 Minn. 245, 253 N.W. 766. And in caring for the public health, a city is acting in a governmental capacity and the same ruling is followed. Bryant v. City of St. Paul, 33 Minn. 289, 23 N.W. 220, 53 Am.Rep. 31; Dehanitz v. City of St. Paul, 73 Minn. 385, 76 N.W. 48. In the Dehanitz case, the City of St. Paul maintained a dump where garbage and manure collected throughout the city was deposited. Apparently during high water the rubbish rose to the surface and formed a crust upon which vegetation grew similar to that which surrounded the particular area where the dump was located. A young girl in walking across the dump area was drowned. The court stated (page 393 of 73 Minn., page 50 of 76 N.W.):

"* * * The city owed no duty of protection in respect to her going upon this dumping ground or crust as a traveler. Although it kept a watchman there generally, it was under no obligation to do so, and hence no liability arises by reason of his being absent at the time of the accident. It was performing a public corporate duty in removing garbage and manure from the business and residence part of the city as a protection against disease."

It seems evident that, in the City of Minneapolis which has a population of approximately five hundred thousand inhabitants, suitable hospital facilities are required in the treatment of the poor, aged and indigent who become sick or injured. This hospital does not compete with private or various charitable hospitals which may be located in this community. The fact that it costs the taxpayers of Minneapolis over $900,000 per year to maintain it convincingly reflects that fact, and under the stipulation between the parties it is recognized that the primary purpose of the hospital is the carrying out of the City's statutory duty in providing medical care for its poor and indigent.

If, as stated by the court in McLeod v. City of Duluth, 174 Minn. 184, 187, 218 N.W. 892, 893, 60 A.L.R. 96, when considering the liability of a city in flushing its streets, "It is the character of the service involved which must serve as the criterion by which to govern controversies such as this," it seems clear that the City of Minneapolis is immune from liability herein.

The service performed by the Minneapolis General Hospital is one primarily for the purpose of safeguarding the health and well-being of the poor and indigent of the City, and in maintaining the hospital the City is merely performing its statutory duty. No one else within the confines of the City is charged with that duty and legal responsibility, and the very welfare of the community at large depends upon the health and well-being of the poor and unfortunate, who by reason of their circumstances are more apt to be subject to disease and misfortune than persons more fortunately situated.

Plaintiff stresses the fact that, after he had been admitted to the hospital, his wife came to the City and agreed to pay the sum required by the hospital authorities for his hospital care. While the sum agreed upon was never demanded, or paid by the plaintiff or anyone in his behalf, it would seem that this circumstance in determining the liability of the City becomes wholly immaterial. Certainly, the fact that plaintiff had agreed to pay a daily charge for his care in a hospital of this character does not militate against the fact that the maintenance and operation of the hospital was nevertheless the performance of a governmental function. The charge agreed upon, according to the stipulation of facts, was less than the cost to the City in caring for the plaintiff. In considering the activities of the City in caring for its poor and indigent, it was at best an incidental charge which had no possible effect in transforming a purely governmental function into a private one. It may be observed in passing that plaintiff was a non-resident; he was in dire need of some care, and the court commissioner, who refers the large majority of such mental cases to the City Hospital for temporary care, directed where plaintiff should be confined. Plaintiff was thereby afforded care in a hospital maintained by the City in the performance of its statutory duty to care for its own sick and needy. As heretofore stated, his confinement was in pursuance of the Minnesota statute which authorizes the court commissioner to confine a mentally deranged person in a hospital for observation and examination. This confinement was but the preliminary step to the hearing before the commissioner on the question of plaintiff's insanity. Surely, the care and restraint of an insane person by giving him a temporary haven where he will not harm himself or others peculiarly comes within the affirmative duty of the Board of Public Welfare of the defendant City, which is specifically empowered by the charter

"To aid in the enforcement of, and, as far as practicable, to enforce all laws of this State applicable within the limits of the City of Minneapolis, to the preservation of human life or to the care, promotion or protection of health." Minneapolis City Charter, Chapter 14, Sec. 3(m).

Under these circumstances, it would be difficult to find a more cogent example of the performance of a governmental duty by a municipal body in the maintenance and operation of a tax supported city hospital.

A municipal hospital institution maintained and operated in performance of the city's governmental responsibility to provide medical care for the sick and needy is not stripped of its immunity from liability merely because a patient offers to make a part compensation for his care therein. This view is entirely in harmony with the expression of the Minnesota Supreme Court in cases which it had under consideration where it held that the governmental agency was performing a governmental function notwithstanding that some consideration had been paid by those who were enjoying the facilities afforded by that particular activity. In Mokovich v. School District, supra, it appears that a boy was injured while playing football and lost the sight of one eye by reason of lime that was used as a gridiron line marker. The court held that the School District was not liable in that the football game was carried on in performance of the general educational activities of the District and that the incidental charge made for attendance by the public at the game did not transform a governmental function into a private one. Furthermore, in St. John v. City of St. Paul, supra, where a young boy was injured while swimming at a public bathing beach, the fact that the city made a charge for bathing

suits and other facilities did not render it liable, the court stating (page 15 of 179 Minn., page 171 of 228 N.W.):

" * * * The fact that the city provides for a price the things needed by those making use of a public bathing beach should not change the city's legal responsibility for negligence in the maintenance of its public parks. It appears without contradiction that the city paid out more to provide guards and the rented and purchased facilities for those who availed themselves of the bathing beach than it received from that source."

Authorities from other jurisdictions seem to support this view. In 109 A.L.R., note, p. 1204, the writer states that:

"Where a charitable institution is otherwise held to be exempt from liability to beneficiaries, it has been held that the institution is not made liable by receiving pay from the injured patient or recipient of the institution's services or from others." (Citing cases.)

Reference may be made to the case of City of McAllen v. Gartman, Tex.Civ.App., 81 S.W.2d 147, which although from a court other than Minnesota is strikingly apposite. There, the court was considering the claim of a pay patient against a municipal hospital on account of injuries sustained as the result of the negligence of a student nurse employed by the hospital. The hospital was established under the provisions of the State Constitution and state statutes. It was operated for the conservation of public health and not for the purpose of profit. Those who could not pay for hospital services were received without charge. Those who could pay did so on the basis of the ordinary hospital charges, or at least to the extent of their ability to pay. The court held that there was no liability on the part of the hospital, stating (page 149 of 81 S.W.2d):

"And, moreover, the maintenance of such hospital by a city is in the exercise of a governmental power, so that the city is not liable for the act of negligence of an employee of the hospital." (Citing cases from many jurisdictions.)

It follows, therefore, that on the facts submitted herein the defendant City of Minneapolis is not liable for the torts of its agents in the maintenance and operation of the Minneapolis General Hospital, nor for any negligence of its agents in the hiring of the personnel of such hospital, and that therefore the motion by the City of Minneapolis for a summary judgment in its favor must be granted. It is so ordered.

An exception is allowed to the plaintiff.