THE VILLAGE OF PALESTINE

*v.*

X. F. SILER, Admr.

*Opinion filed February 21, 1907.*

1. MUNICIPAL CORPORATIONS—*city has no authority to furnish electric light to private citizens.* The rule making a municipal corporation liable for its negligence, the same as an individual, where it is furnishing water or gas both for public and private use and is negligent with respect to such acts, does not apply to the matter of electric lights, since a city has, under the statute, no authority to furnish electric light to private consumers.

2. SAME—*city bound to use reasonable care to keep street free from dangerous obstructions.* Regardless of the ownership of an electric light plant, it is the duty of a municipal corporation to use reasonable care not to suffer or permit uninsulated wires to so obstruct the public streets as to render them dangerous to persons using the same.

3. SAME—*what is no defense to charge of negligence in permitting live wire to obstruct street.* A declaration charging negligence on the part of a village in suffering an uninsulated electric wire to so obstruct the street as to render it dangerous to persons using the same, is not answered by pleas averring that the city was operating the electric light plant under its police power to light the streets, or that it was, without lawful authority, furnishing light to private consumers, and it is proper to sustain demurrers thereto.

4. SAME—*right of person to assume that objects placed in the streets are safe.* A person walking upon a public street has a right to presume that objects placed thereon by the municipal authorities

are harmless, unless the appearance of the objects shows them to be otherwise or he has notice of their dangerous character.

5. SAME—*city is bound to maintain electric light plant in a safe condition.* In view of the dangerous character of electricity a city is bound to construct and maintain its electric light plant in a safe condition, and it cannot escape liability for its negligence in that regard by casting upon the injured person the burden of notice of the dangerous character of electricity, and of the wires, poles and machinery connected therewith.

6. SAME—*when a notice of danger is essential to contributory negligence.* The fact that a person walking along a street took hold of a guy wire attached to a pole standing in the street does not bar a recovery against the village for his death, occasioned by receiving an electric shock, unless he knew or had reason to believe that the guy wire was charged with electricity.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Crawford county; the Hon. J. R. CREIGHTON, Judge, presiding.

ABE L. MacHATTON, CALLAHAN & JONES, and EAGLETON & BAKER, for appellant:

The power to light the streets and public places of a city is one of its implied and inherent powers, as being necessary to properly protect the lives and property of its inhabitants and a check on immorality.   Black on Public Corp. sec. 560.

Municipal corporations are not liable for actions of police officers even though appointed by the city.   Dillon on Mun. Corp. sec. 773.

The whole doctrine of the liability of public corporations for the torts of their officers or agents is affected and modified by the principle that the tortious act or omission must be in violation, not of a public duty, but of a private duty.

A municipal corporation is not liable for the negligence of its servant or agent in the course of his employment unless the act complained of was within the scope of corporate powers.   Beach on Public Corp. sec. 763.

To create such liability it is fundamentally necessary that the act done which is injurious to others must be within the scope of corporate powers as prescribed by charter or positive enactment. Dillon on Mun. Corp. sec. 766.

The laws of Illinois make no provision for the sale of electric lights by municipal corporations, except the act passed in 1905, which provides for the sale of electricity by the city of Chicago after the adoption of the act. Laws of 1905, p. 110.

Even as to persons who are in the line of duty, and not in any respect whatever trespassers or guilty of negligence or want of due care, negligence is not imputed against municipal officers or corporations until the defects have existed so long that the authorities might have discovered and remedied them by the exercise of reasonable diligence. *LaSalle* v. *Porterfield,* 138 Ill. 114.

BRADBURY & MacHATTON, and MAXWELL & JONES, for appellee:

The business of selling water, gas or electric lights to inhabitants by a city or village is not an exercise of the police power, and such city or village is not exempt from negligence in maintaining such a system. *Chicago* v. *Selz, Schwab & Co.* 202 Ill. 545.

The general rule is, that when a business is conducted by a municipality in part for profit, even if principally for public purposes, the municipality is liable for damages caused by negligence in its management. *Chicago* v. *Selz, Schwab & Co.* 202 Ill. 550; *Wagner* v. *Rock Island,* 146 id. 154; *Nevins* v. *Peoria,* 41 id. 502.

A municipal corporation which supplies its inhabitants with gas, water or electric lights does so in its capacity of a private corporation and not in the exercise of its police powers. It stands upon the same footing as would any individual or body of persons upon whom like special franchises had been conferred. *Wagner* v. *Rock Island,* 146 Ill. 154.

Where an injury results from negligence in the management of corporate property for business purposes, and from which profit and advantage are derived, the corporation is liable in the same way that an individual would be liable for negligent acts.

Electricity is a silent, deadly and instantaneous force, and a company or municipality handling it is bound to know the dangers incident to its use in the public streets; and while such company or municipality is not an insurer of the safety of the public, it is bound to guard against accidents by care commensurate with the danger. *Electric Co.* v. *Melville,* 210 Ill. 70; *Rowe* v. *Electric Co.* 213 id. 318.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The circuit court of Crawford county rendered a judgment in favor of appellee, against appellant, in an action on the case for $2000 and costs for wrongfully causing the death of his intestate. On appeal to the Appellate Court for the Fourth District that judgment was affirmed.

The plaintiff's amended declaration consisted of three counts, to which the defendant demurred but the demurrer was overruled, and by leave of court it filed a plea of the general issue and two special pleas. Plaintiff demurred to each of these, and the demurrer was overruled as to the first and sustained as to the second and third pleas. The case was then tried before a jury on the amended declaration and the plea of the general issue.

It is not claimed that the declaration was so fatally defective that it would not have supported a verdict, and therefore no question as to its sufficiency can now be raised. By pleading over after its demurrer was overruled the village waived any demurrable defects therein. But it is earnestly contended by counsel for the defendant that the trial court erred in sustaining plaintiff's demurrer to its second and third special pleas.

The several counts of the declaration charge that the defendant owned and operated a certain electric light plant within its corporate limits for the purpose of lighting the public streets and for hire in supplying electric light to the citizens of the village. They then aver that in the operation of its plant it used certain poles and wires along its streets and alleys, and the first count proceeds: "And it then and there became and was the duty of the defendant to keep its said wires properly insulated, located and adjusted so that when the same were charged with electricity persons might pass along and upon and use said public streets without danger or injury therefrom, yet the defendant, not regarding its duty in this behalf, knowingly, carelessly and negligently permitted one of its said wires charged with electricity, as aforesaid, at or near the intersection of Wilson and Grand Prairie streets, in said village, to become and remain uninsulated, and, so uninsulated, to fall from its support on one of defendant's poles to and upon a certain guy wire of the defendant extending from said electric light pole to a certain post of the defendant, and to within, to-wit, four feet from the surface of the said street, and negligently, carelessly and knowingly permitted the same to so remain for a long space of time, to-wit, five days, and by reason whereof said guy wire became and was then and there charged with electricity, and while the decedent was then and there passing along the sidewalk and street there, with all due care, caution and diligence for his personal safety, his hand and body came in contact with said guy wire charged with electricity, as aforesaid, and a current of said electricity passed from said guy wire to, upon and through the body of the said decedent, and thereby he, the said decedent, was then and there instantly killed." The second and third counts are not materially different in their averments of negligence from the first.

The first special plea avers that at the time of said alleged injury the defendant was, and now is, a municipal corporation, etc., authorized, under the police power of the State,

to provide for lighting its public streets, and pursuant to such authority it was operating a certain electric light plant, with poles and wires on the public streets, and had then and there certain wires attached to a dynamo, which wires extended along certain poles then and there erected for the support of said wires, which said poles were then and there held in position by certain guy wires fastened to certain posts then and there set in the ground of the public streets of the defendant, and said electric wires were connected to certain lamps located along the streets, and said lamps were then and there lighted by the transmission along, through and upon said wires so connected with the said dynamo, of a current of electricity from said dynamo, "and the injury as complained of in said several counts of the declaration was occasioned while the defendant was then and there lighting the lamps along said several streets of the defendant pursuant to the authority hereinbefore set forth." The second special plea avers that the defendant was a municipal corporation, etc., and as such "had no power or authority, under the laws of said State, either by direct enactment or as a necessary incident to such authority, to furnish electric lights, or electricity to make light, for hire, to any citizen or resident of this defendant, and the injuries alleged in the several counts of the declaration to have been caused by carelessness or negligence on the part of this defendant while so furnishing such light was not within the authority of this defendant."

It is insisted in the argument, in support of the sufficiency of these pleas, that, inasmuch as the defendant was a municipal corporation exercising its police power for the lighting of the public streets of the village, it could not be held liable for an injury resulting from its negligence in the exercising of such power; that the case is within the rule announced by this and other courts as to the exercise of police power in creating a fire department and other departments for the benefit of all the public. And as to the second special plea

it is insisted, that, inasmuch as the statute simply authorizes cities and villages in this State to provide for lighting their streets and other public places, the attempt of the village to furnish light to private citizens was beyond its power, and therefore, under the two pleas, the doctrine of *respondeat superior* has no application. In Dillon on Municipal Corporations (vol. 1, sec. 27,) the rule in such cases is laid down as follows: "A municipal corporation which supplies its inhabitants with gas or water does so in its capacity of a private corporation, and not in the exercise of its powers of local sovereignty. If this power is granted to a borough or city it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good. In separating the two powers, public and private, regard must be had to the object of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character; but if the grant was for purposes of private advantages and emoluments, though the public may derive a common benefit therefrom, the corporation, *quo ad hoc,* is to be regarded as a private company. It stands upon the same footing as would any individual or body of persons upon whom the like special franchises had been conferred." We have accordingly held that where a municipality acts in the dual capacity of furnishing water, gas or other commodity, both for public and private use, under authority of law, it stands upon the same footing as would a private corporation or individual and is alike liable for its negligent or wrongful acts. (*Wagner* v. *City of Rock Island,* 146 Ill. 154; *City of Chicago* v. *Schwab & Co.* 202 id. 550.) Other courts have held the same rule.

Counsel for appellee seem to rely upon this doctrine, but if the rule that a corporation acting in its public capacity is not liable in such case is applicable to this case, the exception growing out of the fact that it also furnishes the commodity to private consumers could not be applied, for the reason

that there is no authority conferred upon a city or village to act in the latter capacity. In other words, in order to bring the case within what may be termed an exception to the general rule, it must appear that authority was conferred upon the village to furnish electric lights to private citizens, and we find no such authority, either express or implied. It has been held, though never directly by this court, that "cities and villages have no power, under the statute, to furnish electric lights to the inhabitants nor to fix rates and collect for such services." *Village of Ladd* v. *Jones,* 61 Ill. App. 584.

We are, however, of the opinion that counsel for the defendant, by their first and second special pleas, misapprehended the *gravamen* of plaintiff's cause of action as set up in the several counts of the declaration. The wrong done to the plaintiff, as there alleged, was not merely in the negligent operation of the electric light plant, but the charge is, and the evidence proved, that the deceased came to his death by reason of the defendant's omission of duty in keeping its public streets and sidewalks free from obstructions and the deadly wires of its light plant. Clearly, the charge is not merely that the defendant negligently maintained and operated its electric light plant, but is that it suffered and permitted uninsulated wires to obstruct the public street so as to render it dangerous to persons passing along the same. The section of the statute conferring powers upon cities, villages and towns, (section 62 of chapter 24,) imposes the duty upon the municipal authorities to regulate the use of streets and "prevent and remove encroachments or obstructions upon the same." The declaration expressly charged the defendant with a violation of the duty of keeping its streets free from obstructions and dangerous obstacles, and it was no answer to those allegations to say by the pleas that the defendant maintained the electric light plant in its public, municipal capacity. Whoever owned the plant, whether a municipal corporation, a private corporation or an individ-

ual, the village was bound to see that its public streets were not improperly used, encroached upon or rendered dangerous to people rightfully using the same. If the charge in the declaration had been that the deceased came to his death by coming in contact with electric wires improperly insulated or placed at other places than upon the public streets and highways of the village there would have been force in the position of counsel for defendant, but the pleas were no answer to the allegations of the several counts of the amended declaration, and the demurrer was therefore properly sustained to each of them.

Timely and proper motions were made to withdraw the case from the jury upon the ground that the evidence did not fairly tend to support plaintiff's cause of action, which motions were overruled and the defendant excepted. The facts proved upon the trial were not seriously controverted, though counsel reach different conclusions as to the effect of the evidence. It was shown an electric light was established at the intersection of cross-streets in the village, one called Grand Prairie street, running north and south, and another Wilson street, running east and west. The light was suspended in the center of the intersection from two poles, each about twenty-five feet high and located on the south-east and north-west corners of the intersection. An insulated wire carrying a voltage from the electric light plant was attached to pins, furnished with glass insulators, fastened on cross-arms near the tops of these poles. From a point about a foot below the cross-arms at the south-east corner an insulated guy wire extended diagonally across the sidewalk, in a south-easterly direction, to another pole set about forty inches south of the walk and about one foot west, to the east line of the street, the wire being attached to the guy pole about five feet from the ground. Prior to the accident the pin holding one of the electric light wires to the arm of the pole broke off, and let the wire, with the glass insulator, drop down and rest upon the guy wire. The in-

sulation on the wire had become worn and was defective, permitting the electric current to communicate to the guy wire extending to the pole to which it was attached, on the south side of the walk. The deceased, a boy eighteen years of age, was employed in the store of one Deitz, and on the night of his death, about 11:30 o'clock, left the store with his employer, starting home. When the street running east and west from the intersection above mentioned was reached they turned west on the south side of the street, deceased being on the right-hand side of the walk. As they approached the intersection Deitz stopped, passed behind the deceased and started in a north-westerly direction across the street. When about half way across he saw a flash of light and heard a noise behind him. He immediately called to the boy, but receiving no answer started back, when he discovered sparks emitting from the wire and saw the hand of the deceased slip from the guy wire, and he immediately fell to the ground dead.

The evidence was somewhat conflicting as to how long the wire, with the insulator, had been dislodged from the pole. Some of the witnesses fixed the time at several days and others at a shorter period, but there can be no question but that it had been in that condition for a sufficient length of time to make it a question of fact for the jury whether or not the defendant was chargeable with constructive notice of the condition. Moreover, the evidence fairly tended to show that actual knowledge of the condition was reported to the superintendent of the light plant before the accident. The facts proved upon the trial fairly tended to establish every material allegation of the declaration, and the court properly refused to instruct the jury to find the defendant not guilty.

In determining the question of the care required at the hands of the defendant, the fact must not be ignored that the use of electricity for the production of light and power is attended with great danger, and the care required of those

using it must be commensurate with the danger. The evidence produced before the jury furnished no basis for the contention that the deceased was guilty of contributory negligence.

The sixth and eighth instructions given on behalf of the plaintiff are objected to as misleading and erroneous. The sixth simply told the jury that a person walking upon the public street of a village has a right to presume that anything placed thereon by the village authorities is harmless, "unless its appearance shows it to be otherwise or unless he has notice of its dangerous character." The criticism is, that it presupposes that a person walking on the public street has the right to turn aside and handle and investigate any and everything placed along and on the street by the municipal authority, no matter for what purpose. We do not think the instruction is susceptible of such meaning, but that the express qualification that unless the object appears dangerous or the person has notice of its dangerous character, rendered it a fair statement of the law as to the rights of persons using the public streets and walks of a village or city. The eighth instruction is to the effect that if the jury believe, from a preponderance of the evidence, that the post to which the guy wire was attached was in the public street and within the easy reach of the decedent while upon the street, and that the deceased had no notice of its dangerous condition, the jury might consider such facts, together with all the other facts and circumstances in proof, in determining whether or not deceased was guilty of contributory negligence. The objections to it are so general that we are unable to understand just what the error complained of is, but when taken in connection with all the other instructions in the case it cannot be said to be misleading. It will be observed that it does not direct a verdict upon the finding of certain facts, but simply authorizes the jury to consider those facts, with others, in passing upon the question of contributory negligence.

It is again insisted that the court erred in modifying several of the instructions on behalf of the defendant. In all sixteen instructions were given at the instance of the defendant and two refused. If we are right in what we have said as to the liability of the village on the allegations of the declaration the two instructions were properly refused, and this counsel for appellant do not question.

The third instruction, as offered, was to the effect that unless it appeared that the deceased, while in the exercise of due care and caution for his own personal safety, *necessarily and* unavoidably came in contact with a guy wire, the jury should find the defendant not guilty. The court struck out the underscored words, and this modification it is claimed was error. We do not think so. The instruction as given stated the law as favorably to the defendant as it was entitled to.

The sixth instruction was to the effect that if deceased took hold of a wire charged with electricity and thereby received the shock which resulted in his death the plaintiff could not recover, and the court modified it by inserting the words, "knowing or having reason to believe the same to be charged," and "knowing or having reason to believe the said wire to be charged." The modification was proper.

The seventh instruction was also modified. As offered by the defendant it read: "In cities and villages where electricity is used for lighting or other purposes, all persons must take notice of the dangerous nature of the electricity and electrical machinery and govern themselves accordingly. (But it is the duty of the city or village to construct and maintain such plant in a safe condition.) Whoever voluntarily and unnecessarily interferes with or undertakes to handle any of the wires, apparatus, machinery or attachments of such electrical property of any such village or city (for an unlawful purpose) does so at his own peril, and if he receives any injury thereby he cannot recover damages from the city or village for the injury so received." The

court modified the instruction by adding the words ·in parenthesis, as above shown.   The first modification was certainly proper under the facts of the case.   The village had no right to carelessly and negligently construct an electric light plant and then escape liability by casting the burden of notice of the dangerous character of electricity, machinery, etc., upon the injured person.   It was, as the court stated in the modification, its duty to construct and maintain its plant in a safe condition.   The last qualification was perhaps unnecessary, but we do not see that it could have had any prejudicial effect upon the rights of the defendant.

Other instructions asked by the defendant were slightly modified, and it is claimed erroneously; but no substantial error is pointed out in that regard, and our examination of the modifications has led us to the conclusion that they did not materially change the meaning and effect of the instructions.

We are satisfied, after a careful consideration of each of the questions involved in this record, that the judgment of the trial court was right and properly affirmed by the Appellate Court.   Its judgment will accordingly be affirmed.

*Judgment affirmed.*