FAY SHORT, Administratrix, v. FORT DODGE LIGHT & POWER COMPANY, Appellee.

**Master and servant:** NEGLIGENCE OF MASTER: EVIDENCE. Under the evidence in this case the question of whether the operator of an electric light and power plant was negligent in permitting a high voltage wire to come in contact with and charge a light wire, which plaintiff took hold of, receiving a shock which caused his death, is held to have been for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE: ASSUMPTION OF RISK. One who has been employed about an electric light plant for some time is charged with such knowledge as ordinary people who have had any 'experience with the use of electricity for lighting purposes are presumed to know; and he is presumed to know that an electric light wire carries a voltage which will not under ordinary circumstances produce serious results, and is not negligent, as a matter of law, by taking hold of an ordinary light wire without knowing that it has been charged with a heavy voltage by coming in contact with another wire; nor in so doing does he assume the risk, as a matter of law, arising from the fact that the light wire has been thus charged with a heavy voltage.

**Same:** SCOPE OF EMPLOYMENT. An employee about an electric light plant whose duties required him to perform all kinds of work, and who went with the superintendent of the plant into a room to remedy a difficulty with the lights, and to whose presence and assistance no objection was made, was not a mere volunteer but was within the scope of his employment while in the room and attempting to remedy the difficulty.

*Appeal from Webster District Court.*—HON. C. E. AL-BROOK, *Judge.*

FRIDAY, NOVEMBER 18, 1910.

AN action to recover damages for the death of the plaintiff's husband. After the plaintiff's evidence had been introduced, the court directed a verdict for the defendant. The plaintiff appeals from a judgment on such verdict.—*Reversed.*

*B. J. Price* and *Kelleher & O'Connor,* for appellant.

*Healy & Healy,* for appellee.

SHERWIN, J.—The defendant at the time of the accident was operating an electric light and power plant in the city of Ft. Dodge. The business of generating electricity was carried on in a building about one hundred feet square. The power used for running the dynamos was supplied in part by steam engines and in part by gas engines. The apparatus and machinery was all located in one building, but that building was divided into different rooms; all, however, being connected. One of the rooms was a boiler room, containing several steam boilers, and another one of the rooms contained the gas producers. Both of these rooms opened directly from the room containing the engines and dynamos. The defendant at the time in question furnished electricity for private lighting purposes, and also furnished electricity for arc lights which were used on the streets of Ft. Dodge, and for power purposes. The building and the several rooms therein used by the defendants for this business were also lighted by electricity and by gas. The electricity used for that purpose was taken from secondary wires which were used for distributing electricity to city consumers. There were primary wires leading from the dynamos to a pole some distance outside of the building, upon which there was a transformer, and the wires which carried electricity into the boiler room of the defendant's plant came from the

1. MASTER AND SERVANT: negligence of master: evidence.

secondary wires in the transformer, and were supposed to carry not to exceed one hundred and ten or two hundred and twenty volts of electrictiy. There is evidence tending to show that the wires were used so that, if a complete circuit was made by bringing the ends of the wires together, the voltage would be two hundred and twenty, but, unless there was such a connection of the wires, the voltage would be one hundred and ten. There were cross-arms on the pole of which we have spoken, and on a cross-arm that was above the arm that carried the secondary wires there was an arc light wire carrying from two thousand to two thousand and five hundred volts of electricity. In the boiler room there was a drop light extending from the ceiling, which was about twenty feet high, to the ground. This, as we understand the record, was an ordinary drop cord with an electric light socket and a bulb on the end, but the cord was long enough so that the light could be taken from one boiler to another and to different places in the room, as necessity required.

The plaintiff's intestate had been in the employ of the defendant for several months before his death. The evidence shows that during the time of his employment he had worked in different parts of the plant. He helped as a machinist and fired in the boiler room. He fired in the gas plant, and fired the gas-producing engine. He also performed work as a wiper, and, when there was nothing else to do, helped to clean up the engines and the machinery generally. In short, the evidence tends to show that he was a man of all work about the building, in so far as such work could be done by a nonexpert electrician. At the time in question, he was working on a shift that kept him there until one o'clock at night. At about fifteen minutes of one in the morning of the night of February 12, 1908, some of the lights in the boiler room went out. The plant was at that time in charge of the chief engineer, C. H. Snook, who was at the time the lights went out in the

gas producer room with the deceased. Upon learning that the lights had gone out in the boiler room, Snook and the deceased went into the boiler room. Mr. Snook remained there but a short time, when he went back to attend to one of his engines, and was gone from the boiler room perhaps a minute or a minute and a half, as he testified. When Snook left the boiler room to go to his engine, the deceased was standing in front of one of the boilers, and, when he returned a minute and a half or two minutes later, the deceased had received the shock of electricity that caused his death, and was lying on the end of a water pump near the boiler where he had stood. The testimony shows that, while Snook was absent from the boiler room, the deceased took hold of the light cord, of which we have spoken, above the socket and bulb, and that he received a shock of electricity that caused his death. There was evidence before the jury tending to show that the wire carrying the electricity for the arc lights was in contact with the secondary wire which furnished electricity for the boiler room, and that the great voltage carried by the arc wires had been distributed to the wire going into the boiler room, and that Short had probably received a current of electricity consisting of considerably over one thousand volts. The defendant asked that a verdict be directed on the ground that no negligence of the defendant had been shown; that the plaintiff's intestate was guilty of contributory negligence; that he had assumed the risk; and that he was a mere volunteer when he placed his hands upon the cord in question.

We think there was sufficient evidence to take the case to the jury on the question of the defendant's negligence. There was evidence tending to prove that, when the wires carrying the arc circuit were placed on the pole in question, they were permitted to sag so that they came in contact with the wires carrying the secondary circuit, and the wires carrying electricity into the boiler room.

There was also evidence tending to show that a high voltage of electricity would pass from what may be called the primary wire into a secondary wire when the two wires were in contact, even though both wires were insulated with waterproof insulation. There was also evidence tending to show that the arc circuit wire and this secondary wire had been in this same condition for some two or three weeks prior to the death of Short, and that another employee of the defendant had received quite a severe shock by taking hold of the same cord that Short had hold of when he was killed. The defendant's negligence under this evidence was clearly a question for the jury.

Nor do we think it can be said as a matter of law that the deceased was guilty of contributory negligence. As we have heretofore said, he had been employed in and about this electric plant for some time before his death. He must be presumed to have had the knowledge that common experience shows exists among people who have had any experience at all with the use of electricity for lighting purposes; and it is a matter of common knowledge that the voltage used for ordinary lighting purposes is not generally over one hundred and ten or one hundred and twenty, and that a current of electricity of such strength, or even of double that strength, will not under ordinary circumstances produce serious results. The evidence tended to show that when Short went into the boiler room with the engineer, Mr. Snook, he went there for the purpose of discovering, if possible, what had caused the extinction of the electric lights, and there is nothing in the record, aside from some testimony which we shall presently refer to, which even tended to show that he knew, or should have known, that the wire that he took hold of was charged with a dangerous current of electricity. One Barrett was in the boiler room when Short took hold of the cord, and he testified that, when he saw that Short was about to take hold of the

2. SAME: contributory negligence: asumption of risk.

cord, he said to him that he would not "monkey with any wires like that," to which statement Short answered, "The floor being wet, a person would get an awful shock that way." This same witness had testified before a coroner's jury that Short said that, if the wires got together, there would be a short circuit and a shock. These conflicting statements left it for the jury to say what the conversation was in fact. But, if the warning was given by Barrett as he claims, it would not necessarily follow that the deceased was guilty of contributory negligence, for Barrett had no knowledge of the overcharged condition of the wires or of the danger in coming in contact therewith. The danger arose from the overcharged condition and neither knew of such condition. Taking hold of electrical wires when the person has reason to believe they are not charged with a deadly current can not be said to be negligence as a matter of law. *Morgan's Adm'r v. Electric Co.,* 122 Ky. 476 (91 S. W. 703, 6 L. R. A. [N. S.] 459); *Village of Palestine v. Siler,* 225 Ill. 630 (80 N. E. 345, 8 L. R. A. [N. S.] 205). Nor can it be said as a matter of law that a person is guilty of contributory negligence who takes hold of an insulated wire used for conveying electricity for ordinary lighting purposes; and to hold in this case that the deceased was guilty of contributory negligence would require a holding to that effect.

There is nothing in the claim that the deceased assumed the risk of taking hold of this electric wire charged with two thousand volts of electricity. It may be true that he assumed the risk of taking hold of a wire charged with one hundred and ten or two hundred and twenty volts of electricity, but it can not be said from anything which appears in this record that he assumed the risk of contact with a highly overcharged wire.

The defendant very insistently contends that Short was a mere volunteer in the boiler room at that time, and that the plaintiff should not be permitted to recover be-

cause thereof. We are unable to agree with this position.

3. SAME: scope of employment. The decedent had worked in different rooms upon the premises, and seems to have been called upon to do most all kinds of work. As we have heretofore said, the evidence tended to show that he had been called upon to do various kinds of work except, perhaps, work requiring the services of a skilled electrician. Furthermore, at the time in question, he went into the boiler room with the superintendent of the building. They went there together for the evident purpose of locating the trouble with the lights for the purpose of remedying the difficulty. No objection to Short's presence or to any activity on his part was made by the superintendent, and we think the jury would have been justified in finding that Short was there with the distinct approval of the defendant, and that he was not outside of the scope of his employment. *Ferguson v. Iowa Central Ry. Co.*, 58 Iowa, 293; *Grannis v. Chicago Railway Co.*, 81 Iowa, 444; *Liming v. Iowa Central Ry. Co.*, 81 Iowa, 246; *Glanz v. Railway Co.*, 119 Iowa, 611; *Grimm v. Omaha Electric Light Co.*, 79 Neb. 387 (112 N. W. 620).

We think, on the whole record, that this case was one that should have been submitted to the jury, and that the court erred in directing a verdict for the defendant. The judgment is therefore *reversed*.