**Henry Becker, Appellee, v. Sanitary District of Chicago, Appellant.**

**Gen. No. 20,935.**

1. PLEADING, § 14*—*when declaration in action for personal injuries not objectionable as stating conclusions of law.* In an action to recover for personal injuries caused by plaintiff's hand coming in contact with an electric wire of defendant carrying a current of 12,000 volts, which wire was about thirty-feet from the ground and attached to a pole, where the declaration alleged that the accident occurred while plaintiff, a hanger of electric signs, was "lawfully" working on such a sign which extended into the street at a height of about twenty-eight feet from the ground near said wire, defendant first demurred, and after its demurrer was overruled, pleaded the general issue, and under both demurrer and plea contended that the sign on which plaintiff was working at the time of the accident was a purpresture and a nuisance, obliging plaintiff, in order to charge defendant with

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

any duty as to the condition of the wires, as to plaintiff, to allege and prove affirmative facts tending to show a right thus to occupy space above the street, and that without such allegation and proof the allegation that plaintiff was "lawfully" in the situation where the accident occurred was a mere conclusion of law. *Held*, that defendant's contention was without merit, for the reason that such signs, if not interfering with the public use of a street or sidewalk, are not to be regarded as nuisances, nor is every obstruction of the street a purpresture.

2. NUISANCE, § 1*—*how distinguished from purpresture.* A purpresture is to be distinguished from a nuisance in that though it may be a nuisance it is not necessarily so.

3. ELECTRICITY, § 11*—*when failure to insulate is negligence.* In an action to recover for personal injuries, caused by plaintiff's hand coming in contact with an uninsulated electric wire of defendant carrying a current of 12,000 volts, which wire was carried on poles above ground, where it appeared that there was nothing which should have warned plaintiff that the wires carried current and were uninsulated, and where it also appeared that it was electrically practicable to so insulate such wire as to prevent the escape of the current, evidence *held* to tend to prove negligence on the part of defendant.

4. ELECTRICITY, § 9*—*what degree of care required in employing.* While one using a dangerous element such as electricity in the public streets is not an insurer of the safety of the public, yet such person using such element is bound to anticipate any legal use of the street by the public, and to know of and to use reasonable care to guard against dangers which may arise in such use of the street by the public, whether such public use be for business, convenience or pleasure.

5. ELECTRICITY, § 9*—*what constitutes ordinary care in employing.* Ordinary care exercised by those who use for profit a dangerous element like electricity, in order to prevent injury to others from the use of such element, must be commensurate with the danger, and as there is greater danger and hazard in the use of such an element as electricity, there must be a corresponding exercise of skill and attention to avoid injury to others, in order to come within the legal meaning of the term "ordinary care."

6. ELECTRICITY, § 9*—*what care required of Sanitary District of Chicago in using.* The Sanitary District of the City of Chicago is a municipal corporation, and when engaged in transporting and sell-ing electrical power for either public or private purposes is to be regarded as a private corporation, and liable as such for its negligent and wrongful acts.

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

Becker v. Sanitary District of Chicago, 194 Ill. App. 639.

Appeal from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed October 5, 1915. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.**    This is an action brought by Henry Becker, plaintiff, against the Sanitary District of Chicago, defendant, to recover damages for personal injuries sustained on August 16, 1910, occasioned by his coming in contact with certain electric wires carrying a current of about 12,000 volts, said wires being strung on poles about 30 feet from the ground and said poles being on the east side of Forty-eighth avenue, a public street in the City of Chicago, about two feet east of the east curb line of said avenue. The wires were of copper, but merely covered with a waterproof insulation to prevent corrosion, and were part of defendant's system of transmission wires which carried the electrical current from defendant's station at Thirty-first street and Western avenue to the West Park substation for lighting the West parks, and then on to Bloomingdale road and Ashland avenue for furnishing light and power to factories, etc. On the east side of Forty-eighth avenue and about midway in the block south of Lake street was a theater building, called Lyda theater, facing west. The width of the cement sidewalk from said building to the east curb line of Forty-eighth avenue was sixteen feet. In front of the entrance to the theater and about fifteen feet above the sidewalk was a canopy, extending west almost to said east curb line. Plaintiff was an electric sign hanger. On the day of the accident he, with other workmen, was engaged in hanging an electric sign made of galvanized iron, attached at its east end to said building, and also supported by means of cables attached to the building and fastened to the sign by eyebolts immediately east of its west or outer end. The sign was three feet wide and about twelve feet long. When hung in place the top of the sign was

about thirteen feet above the canopy, and the word "Lyda" on both sides of the sign could be read from the north or from the south. At the time of the accident the work of hanging the sign was about completed. Plaintiff was standing on one of the upper rungs of a ladder, the lower end of which rested on the top of the canopy and the upper end leaned against one side of the sign near its outer end. The top of the sign came about even with plaintiff's elbow as he stood. The electric wires of defendant were about two feet west of the outer end of the sign and about two feet above the top level of the sign. Plaintiff had just finished adjusting a turn buckle, about nine inches from said end of the sign, used for tightening the cables. He raised his left hand to give a signal to another workman, when his hand came in contact with one of said wires, there was a flash, and plaintiff received a shock which threw him from the ladder on to the canopy. He was terribly burned in many places on his body, and while in the hospital suffered intense pain. He, however, made a remarkable recovery, and while he was enabled to leave the hospital in fourteen weeks, and afterwards to resume work at his calling, he suffered some permanent injuries. The jury returned a verdict finding the defendant guilty and assessed plaintiff's damages at $5,000, upon which the court on May 9, 1914, entered judgment. It is not assigned as error, or argued, that the verdict is excessive.

Plaintiff's original declaration, filed July 21, 1911, consisted of two counts. The first count alleges, in substance, that on August 16, 1910, defendant was a corporation engaged in manufacturing, selling and dealing in electric power; that it had and maintained in Forty-eighth avenue, a public street in the City of Chicago, certain electric wires, carrying a current of 12,000 volts, strung upon poles closely adjacent to the sidewalk or curb; that on said day plaintiff was

"lawfully engaged" in placing a certain metal sign projecting over the sidewalk close to the wires of the defendant; that defendant was bound to maintain its wires in a reasonably safe condition so as not unnecessarily to endanger and injure persons "lawfully" upon the street, and to have and keep said wires insulated so that the same might not be a source of injury to persons near and about the same; that while plaintiff was so working, with all due care, etc., he came in contact with said wires, which defendant had negligently permitted to remain without sufficient insulation, whereby because of such negligent and insufficient insulation the heavy voltage and current in said wires passed into and through plaintiff's body, and burned and injured him and caused him to fall from the ladder upon which he was then working on to a certain canopy, and as a direct consequence of the defendant's said negligence he was severely and permanently injured. The second count alleged, in substance, that the wires carried so heavy a voltage that their maintenance and operation without any insulation to prevent injury to plaintiff and members of the public constituted a nuisance, and that while plaintiff was "lawfully" working as aforesaid upon the sign he, without fault on his part, came in contact with said wires and was severely and permanently injured as a direct consequence of said nuisance and the unlawful acts of the defendant. To these counts the defendant filed a plea of the general issue.

On October 14, 1911, plaintiff filed three additional counts, to which defendant filed a general and special demurrer, and on May 25, 1912, plaintiff filed a fourth additional count, to which defendant also demurred generally and specially. The demurrer to the first additional count was subsequently sustained, and the allegations of that count need not be mentioned. The second, third and fourth additional counts are substantially the same as the first original count, alleging

the "lawful" presence of plaintiff in said public street while engaged in erecting said sign, the presence of defendant's poles and wires in said public street, the high voltage carried in the wires, and the negligence of the defendant in not sufficiently insulating the wires, etc. The fourth additional count contains the further allegation to the effect that the defendant negligently failed to place signs or warnings upon the poles or wires warning persons of the dangerous voltage being conveyed through the wires.

One of the stated causes of demurrer to said last mentioned counts is that plaintiff states "conclusions of law" when he avers that he was "lawfully engaged" and was "lawfully upon said public street," in that he does not aver *facts* showing that he was so lawfully engaged and so lawfully there. The court overruled defendant's demurrers to said counts and subsequently defendant filed a plea of the general issue thereto.

EDMUND D. ADCOCK and ROSS C. HALL, for appellant; OSCAR H. OLSEN and EDMUND M. SINNOTT, of counsel.

ROBERT J. FOLONIE, UNDERWOOD & SMYSER and ARTHUR A. BASSE, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

It is first contended by counsel for defendant that the judgment should be reversed because the evidence does not affirmatively show that plaintiff was *lawfully* at the place where he was injured at the time of the accident, and, under the facts shown, plaintiff must be considered as having occupied the position of a trespasser to whom defendant owed no other duty than to refrain from wilfully and wantonly injuring him. The argument, as disclosed in counsels' written brief, is substantially as follows: That in order for a person

to legally occupy space within the confines or limits of a public street, above the surface thereof, it is incumbent upon such person to establish such right, by showing a permission or license from the municipality, that such occupancy of space above the surface of the street ''is presumed to be unlawful until affirmatively shown to be lawful''; that the sign in question upon which plaintiff was working, extending as it did over a public sidewalk and at a height of about twenty-eight feet from the surface of the street, unléss properly authorized by law, ''would be a purpresture and therefore a nuisance,'' the presence of which, or that anyone would be employed in working on the same, defendant would not be bound to anticipate; that there was no evidence introduced that the City of Chicago, in pursuance of any grant of power conferred upon cities, had enacted any ordinance authorizing the erection of such a structure, or what the ordinance was, or that any license or permit had been issued for the erection of such a structure; and that, therefore, for aught that appears in the evidence plaintiff's position was that of a trespasser and he is not entitled to recover.   Counsel also contend that not only was it incumbent upon plaintiff to affirmatively *prove* that he was lawfully at the place where the accident occurred, but that he should have *alleged* in his declaration *facts.* showing that he was lawfully there, and that the allegations of his being ''lawfully'' there, and ''lawfully engaged'' there, are mere conclusions of law and insufficient.

In reply, counsel for plaintiff contend, (a) that the question, whether the sign had been erected pursuant to a license from the City of Chicago, is not involved, but the real question is whether the defendant was bound to anticipate that persons might in the pursuit of their business, pleasure or affairs come in close contact with the wires *in a public street,* and take precautions to safeguard such persons by properly insulating the wires; and (b) that the presumption is' that

plaintiff was lawfully where he was at the time of the accident and that the erection of the sign had been permitted by license, if one was required; and that the allegation in the declaration that plaintiff was lawfully engaged in erecting the sign imports that he was so engaged by the city's license, if one was required, and if defendant wished to take issue on this matter of inducement it should have done so by a special plea, which it did not do but filed a plea of the general issue.

In the case of *Commonwealth Elec. Co. v. Melville*, 210 Ill. 70, plaintiff, while under a sidewalk, was injured by reason of shock and burns from an uninsulated wire of defendant. The sidewalk was level with the street at the curbside. The adjoining lot was much lower. A space existed through which persons could crawl under the sidewalk from the lot side if they wished. It was contended that plaintiff was a trespasser and could not recover. The court, however, held that plaintiff was rightfully there, and that the same rule did not apply to him as applies to one who goes upon the property of another with or without permission, in that he was not upon property either owned or controlled by the defendant. The court says (p. 77):

"Plaintiff's act in taking hold of the wire was an accident. The injury resulted from that accident, and while it may be conceded that he had no right to take hold of the wire, the question still remains, who was responsible for the injury that resulted from his accidental contact with that wire? So far as being in the space under the sidewalk was concerned, plaintiff had the same right to be there that the defendant had, but he could not rightfully interfere with the property of the defendant or occupy the space already pre-empted by it. Appellant urges that the rights of the parties to be in this space were not equal, for the reason that it was there in pursuance of the terms of an ordinance and could not be summarily ejected, as the plaintiff, perhaps, might be. This is wholly immaterial. * * *

Electricity is a subtle and powerful agent. Ordinary care exercised by those who make a business of using it for profit, to prevent injury to others therefrom, requires much greater precaution in its use than where the element used is of a less dangerous character. As there is greater danger and hazard in the use of electricity, there must be a corresponding exercise of skill and attention for the purpose of avoiding injury to another, to constitute what the law terms 'ordinary care.' The care must be commensurate with the danger. * * * Appellant's failure to use some device to guard its wires in this space under this sidewalk so that no person could inadvertently touch the cable tended to show a lack of ordinary care.''

In the case of *Loth v. Columbia Theater Co.*, 197 Mo. 328, it appears that an electric sign fell upon plaintiff injuring him. Suit was brought against the theater company, the contractor engaged in lowering the sign, and the city. The court held, in substance, that the question of license or no license from the city was not involved, that the sign extending over the sidewalk from the building line, when safely and securely attached, was not a nuisance *per se,* but that it might become a nuisance by being allowed to become unsafe and dangerous to persons on the sidewalk. In the case of *Engel v. Frank Parmalee Co.*, 169 Ill. App. 410, an unlicensed hotel runner, while acting as such in a public street, was injured by the negligence of the defendant, and it was held that the fact that he was unlicensed did not preclude a recovery by him, where his violation of the ordinance, which required that hotel runners be licensed, did not cause or contribute to the injury and he was not individually offending against defendant.

In Lawson on Presumptive Evidence (p. 93), the author states the rule to be in civil cases that ''a person who is shown to have done any act is presumed to have done it innocently and honestly, and not fraudulently, illegally or wickedly''; and again the author

says (p. 102) : ''The question is whether A has committed a certain act; the doing of the act renders A liable to a penalty; that A has done an act involving a penalty will not be presumed.'' In *Munson v. Fenno*, 87 Ill. App. 655, it is held that in the absence of proof to the contrary a license to act will always be presumed. ·

In Joyce on Nuisances (chapter 5, sec. 60) it is said: ''A purpresture is to be distinguished from a nuisance, for though it may be a nuisance it is not necessarily one.'' In *Smith v. McDowell*, 148 Ill. 51, 65, it is said: ''It by no means follows that every obstruction of a street is a purpresture, or illegal.'' And on page 66 the court states that ''extensions of signs into the street,'' not interfering with the public use of the street or sidewalk, are not to be regarded as nuisances.

Under the pleadings and under the facts in evidence, and in view of the foregoing authorities, we are of the opinion that the contention, first above mentioned, of counsel for defendant is without merit.

It is secondly contended by counsel for defendant that, even though plaintiff had a right to be where he was at the time of the accident, still, defendant, in the exercise of ordinary care, was only required to so place its wires that they would be reasonably safe for persons using the street in the usual and ordinary way, viz., traveling over the surface thereof. In other words, the contention is that the defendant was not bound to anticipate the likelihood of injury to persons from its wires, strung as they were in a public street about thirty feet above the surface thereof, though carrying the high voltage of twelve thousand volts and being uninsulated except with a covering to protect the wires from the weather, and therefore defendant was not guilty of negligence.

We cannot agree with counsel. There was evidence introduced by plaintiff showing that wires carrying such a high voltage in public streets were usually

placed underground in insulated casings, yet it was electrically practical, though expensive, to carry them on poles above ground and have them perfectly insulated to prevent escape of the current, and safe. In *Rowe v. Taylorville Elec. Co.*, 213 Ill. 318, plaintiff's intestate, Albert Rowe, was employed by a telephone company in the city of Taylorville. The defendant electric company had operated an electric light plant in said city for about eight years. The poles of the electric company were twenty-five feet high. Those of the telephone company were thirty feet high and were set on the same side of the street as those of the electric company. On the day of the accident Rowe and other employees of the telephone company were at work stringing wires on said company's poles in the street. When the wires of the electric company were not carrying any current there was no danger in working above them, but when the current was turned on it was dangerous. Rowe was on a pole of the telephone company about twenty-five feet from the ground, stretching a wire, when it came in contact with a parallel uninsulated wire of the electric company in which there was a high current of electricity, and he received a shock, fell to the ground and was killed. It had been the custom of the electric company to blow its whistle about five minutes before turning on the current to notify *its employees*. Rowe and the other employees of the *telephone company* knew of the danger in working, and had no intention of working, when the current was on, and they were watching for the whistle, but which defendant did not give before turning on the current. On the trial, at the conclusion of all the evidence, the court directed the jury to return a verdict of not guilty, which they did, and judgment was entered in favor of the electric company, which judgment on appeal was affirmed, and upon the grounds that no recovery could be had because the insulation was defective, when Rowe knew that the electric wire at times

carried a deadly current, and that defendant did not owe to the employees of the *telephone company* the duty to warn them by the whistle of the turning on of the current. Among the questions, however, submitted to the Supreme Court for decision was the question whether the condition of the wires of the electric company, as to insulation, tended to prove actionable negligence on the part of the electric company. It was contended by counsel for the electric company (and substantially the same contention is made here in the instant case) that the duty to maintain perfect insulation did not extend to the entire system of wires, but only to places where defendant might reasonably anticipate that persons would go for work, pleasure or business, and that the duty did not extend to wires strung twenty-five feet above the ground simply because there was a possibility that some person in pursuit of his own business would bring himself in contact with the wires. But the court held to the contrary, saying (p. 322):

"Electricity is a silent, deadly and instantaneous force, and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use. One duty is the insulation of its wires, but that duty does not extend to the entire system. No duty of that kind is imposed on the owner on his own premises as to trespassers or bare licensees, who are neither invited upon the premises nor there for purposes of business with the owner. * * * But the streets of the city were not the private premises of defendant. The streets belong to the public, and the public, generally, have a right to use them. As a matter of fact, the defendant must be held to have anticipated that the public would use the streets as they had a right to do, and also the employees of the telephone company would be working in the streets in the business of that company, and might come in proximity to its wires in attending to their duties. The defendant was not an insurer of the safety of the public, but it was bound to know the dangers incident to the use of the streets by

it and to guard against such dangers by the exercise of care commensurate with them. * * * The duty extends to every place where persons have a right to be, whether for business, convenience or pleasure. The condition of the electric wire as to insulation tended to prove negligence on the part of the defendant which would give rise to a cause of action for an injury to one not aware of the danger, who had a right to rely upon the wire being properly insulated.''

In the instant case the evidence tended to show that plaintiff was not aware of the danger in working in close proximity to defendant's wires. He testified that he had noticed the wires, but that they looked like ''black, common telephone wires,'' and appeared ''as though they had insulation.'' That the condition of defendant's wires as to insulation tended to prove negligence on its part is also supported by the following cases: *Commonwealth Elec. Co. v. Melville, supra; Braun v. Buffalo Gen. Elec. Co.,* 200 N. Y. 484; *Winegarner v. Edison Light & Power Co.,* 83 Kan. 67; *Geismann v. Missouri-Edison Elec. Co.,* 173 Mo. 654; *Thomas v. Electrical Co.,* 54 W. Va. 395; *McCrea v. Beverly Gas & Electric Co.,* 216 Mass. 495.

Counsel for defendant also contend that the court erred in modifying two instructions, presented by defendant, by striking out certain words contained in said instructions. We do not think any error was committed in this regard. In our opinion, had the instructions been given as presented they would have tended to mislead the jury; as modified they stated the law as favorably for the defendant as it was entitled to.

Counsel for defendant further contend that defendant is not liable for torts arising out of injuries to the person. The argument is (1) that defendant is engaged in the performance of a governmental function under the police power, or (2) that defendant is a *quasi* municipal corporation and is not liable for torts unless such liability is expressly imposed upon it by statute. A sufficient answer to this is, we think, that

defendant is a municipal corporation (*Sanitary Dist. of Chicago v. Martin,* 173 Ill. 243, 247), and in transporting and selling electrical power for public and private use is to be regarded as a private company and liable for its negligent and wrongful acts. *Sanitary Dist. of Chicago v. Hanberg,* 226 Ill. 480, 484; *Village of Palestine v. Siler,* 225 Ill. 630, 636.

For the reasons indicated the judgment of the Superior Court is affirmed.

*Affirmed.*